Wayne Thomas AHLERS and Nina Ahlers, Plaintiffs–Appellants,

v.

Ronald J. SCHEBIL, et al., Defendants–Appellees.

No. 98–1247.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted June 10, 1999.

Decided July 30, 1999.

Ian J. Reach (argued and briefed), Reach & Hollenshead, Ann Arbor, Michigan, for Defendants–Appellees Ron J. Schebil, Mark Ptaszek, Jerry Clayton, Ron Mays, Ed Roth and Ernie Milligan.

Mark E. Donnelly (argued and briefed), Office of the Attorney General, Corrections Division, Lansing, Michigan, for Defendant–Appellee Gary Parsons.

Juan A. Mateo (briefed), Detroit, Michigan, for Plaintiffs–Appellants Wayne Thomas Ahlers and Nina Ahlers.

Before: KEITH, DAUGHTREY, and MOORE, Circuit Judges.

KEITH, Circuit Judge.

Plaintiffs–Appellants Wayne Ahlers, a corrections officer, and Nina Ahlers, Wayne's wife, appeal a district court decision granting summary judgment to Defendants for alleged constitutional violations and assorted state tort claims arising out of Wayne Ahlers's arrest for alleged sexual misconduct with a female detainee. We find that the district court properly granted summary judgment in this matter, and affirm the district court's ruling in all respects.

## I. BACKGROUND

### A. Factual Background

Plaintiff–Appellant Wayne Ahlers is employed as a corrections officer at the Washtenaw County Jail. On the evening of August 16, 1995, Ahlers booked Carrie Stiltner into the Washtenaw County Jail for solicitation charges. The next afternoon as Stiltner was being transported to court, she informed another officer, Larry Clemons, that during the early morning hours of August 17th she had been forced to perform oral sex on Ahlers in exchange for food. Clemons promptly reported the allegations to his supervisor, Det. Sgt. Roy Mays.

Stiltner was interviewed on three separate occasions on August 17th regarding her allegations, and each time her story remained consistent.[1] During the interviews, Stiltner also specified that the alleged assault occurred after she was booked but before another female detainee, Felicia Lane, was placed in the holding cell with Stiltner.

Clayton, Mays and another officer decided to place a wire on Stiltner and isolate her in the hopes of obtaining corroborating evidence from any contact Stiltner may have with Ahlers when Ahlers reported for duty on the evening of August 17th. Ahlers did not initiate contact with Stiltner while he was on duty from the evening of August 17th through the morning of August 18th. Moreover, the wire confirmed that when Stiltner asked to speak with Ahlers, Ahlers did not respond. Clayton further attempted to verify Stiltner's story by reviewing booking documents generated on August 17th to ascertain whether there was an opportunity for the alleged assault to have occurred. The records did not account for Ahlers's whereabouts between 12:30 a.m. and 1:00 a.m., leaving a window of time within which the act could have occurred.

It is the policy of the Washtenaw Sheriff's Department to immediately refer substantial allegations of wrongdoing against its officers to a neutral, independent law enforcement agency for investigation. Since Stiltner's accusations were substantial and there was a period of time within which the alleged assault could have occurred, the investigation was turned over to the Michigan State Police on August 18th. Defendant–Appellee Gary Parsons of the Michigan State Police assumed re-

---

1. The first interview, which was audiotaped, was conducted by Defendants–Appellants Roy Mays and Ed Toth. The second and third interviews, neither of which were taped, were conducted by Defendants–Appellants Mays and Jerry Clayton.

sponsibility for the investigation. After August 18th, the Sheriff's Department had no role in Ahlers's investigation, but Clayton did serve as a liaison between the two agencies, providing the State Police with various documents and assistance upon request.

As part of Parsons's investigation, Parsons interviewed Stiltner at least twice. Parsons also suggested that Clayton have Stiltner call Ahlers at home and record the conversation. The conversation produced no admission from Ahlers, but Parsons found it odd that Ahlers was not terribly upset when Stiltner contacted him at home. Parsons also asked Clayton whether there were any potential corroborating witnesses. At Clayton's suggestion, Parsons interviewed Felicia Lane, who was placed in the female holding cell with Stiltner after the incident was alleged to have occurred. Lane confirmed that she had not witnessed the incident, but stated that Stiltner had told Lane that Stiltner had been forced to perform oral sex in exchange for food. Additionally, Parsons attempted to interview Ahlers. Ahlers appeared with his attorney, and invoked his right to remain silent.

While the foregoing describes the actions Parsons did take during the course of the investigation, there are also plenty of things which Parsons failed to accomplish. Parsons did not examine the scene. He was not aware that the door of the female holding cell required two officers to open it one officer must press a buzzer while another officer opens the door. It also did not occur to Parsons that video tape or audio tape from the male holding area might have captured some helpful information.[2] Parsons also neglected to either obtain a sworn statement from Stiltner, or ask her to file a complaint.

Parsons prepared a report and submitted it to the prosecutor. On the basis of: (1) Stiltner's statement; (2) Ahlers's refusal to cooperate with police; (3) Felicia Lane's corroboration of Stiltner's statement; and (4) the taped conversation recorded when Stiltner called Ahlers at home, the prosecutor determined there was sufficient probable cause for a warrant to issue. The prosecutor believed that the taped conversation was particularly inculpatory as, in the prosecutor's opinion, Ahlers had not responded with the outrage one would expect from an innocent corrections officer telephoned at home by a detainee. Subsequently, Ahlers was arrested pursuant to a warrant and charged with two counts of criminal sexual conduct.

Ahlers was arraigned and a preliminary examination was scheduled. When Stiltner failed to appear for the preliminary hearing, it was rescheduled. Days prior to the convening of the rescheduled preliminary examination, Parsons was able to locate Stiltner and speak with her about the alleged incident. Her recollection of the incident was vague and inconsistent with her prior story. Parsons also believed that she appeared unstable. Although Parsons claims he never came to doubt the veracity of Stiltner's allegations, he did conclude that she was not the type of witness one would want to rely on in pursuing such serious charges. Parsons informed the prosecutor that Stiltner did not appear interested in pursuing the charges. Moreover, by this time, Ahlers had taken and passed two polygraph tests. Accordingly, the charges against Ahlers were dis-

2. The booking area is divided into a male and female section—the assault was alleged to have occurred in the female holding cell on the female side of the booking area. At the time of this incident, the female side was not monitored by either audio or video, while the male side of the booking area was monitored by both audio and video. The video and audio equipment located in the male booking area captures sounds and images from the entire booking area, both male and female. Since Ahlers was the booking officer on duty, the video, which is time and date stamped, and the audio are likely to have documented prisoners which Ahlers processed. This may have been helpful in either confirming or refuting whether Ahlers's whereabouts were unaccounted for between 12:30 a.m. and 1:00 a.m.

missed immediately prior to the rescheduled preliminary examination.

### B. Procedural Background

Wayne Ahlers and Nina Ahlers sought damages from several members of the Washtenaw County Sheriff's Department (the "Washtenaw County Defendants" or "Sheriff's Department") and Gary Parsons of the Michigan State Police under 42 U.S.C. § 1983 for alleged violations of Wayne Ahlers's constitutional rights. Plaintiffs argued that Defendants[3] had improperly failed to disclose evidence which would have exculpated Ahlers, and that Defendants had arrested and charged Ahlers for sexual assault without sufficient probable cause. Plaintiffs also alleged violations of assorted state tort laws stemming from the mismanagement of the investigation.

Early in the proceedings, the Washtenaw County Defendants moved for summary judgment on the constitutional claims on the basis of qualified immunity, and on the state tort claims. The court denied the motion without prejudice, finding that with the limited discovery produced up until that point, there remained genuine issues of material fact. *Ahlers. v. Schebil*, 966 F.Supp. 518 (E.D.Mich.1997).

After completion of discovery, the Washtenaw County Defendants again moved for summary judgment. This time the court granted the motion for summary judgment in favor of all Defendants, concluding that Defendants were entitled to qualified immunity for the § 1983 claim. In a thorough, 62–page opinion, the district court determined that, although the Washtenaw County Defendants had failed to turn over potentially exculpatory items prior to the magistrate's probable cause determination, given the short time frame within which they were involved with the investigation, their conduct was not reckless or egregious and did not deprive them of qualified

immunity. *Ahlers v. Schebil*, 994 F.Supp. 856, 872 (E.D.Mich.1998). The court further determined that, in light of Stiltner's accusations, Parsons had sufficient probable cause to submit his findings to a prosecutor. *Id.* at 874–77. Although Parsons's investigation was decidedly incomplete, the court concluded that this did not negate the existence of probable cause and Parsons, as a result, was also entitled to qualified immunity. *Id.* at 877.

Plaintiffs filed a timely notice of appeal challenging the court's ruling.

## II. ANALYSIS

### A. Standard of Review

■ The instant appeal challenges the district court's grant of summary judgment on the grounds that Defendants were entitled to qualified immunity. Because the doctrine of qualified immunity is a legal issue, its application by the district court is reviewed *de novo*. *Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998).

■ Likewise, an appellate court's review of a grant of summary judgment is *de novo*. *Id.* Summary judgment should only be granted where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). That notwithstanding, however, a mere "scintilla" of evidence is insufficient to prevent summary judgment. *Id.* at 252, 106 S.Ct. at 2512. Instead, the non-moving party must come forward with affirmative evidence upon which a rational jury could find for the plaintiff. *Id.* at 252, 256–57,

---

**3.** This opinion refers to the Washtenaw County Defendants and Parsons collectively as "Defendants."

106 S.Ct. at 2512, 2514. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–1481 (6th Cir.1989).

### B. *Probable Cause Determination*

To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right " 'secured by the Constitution and the laws' of the United States" by one acting under color of law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Apparently, Plaintiffs' primary challenge under § 1983 is that Wayne Ahlers was deprived of his constitutional right to be free from an unreasonable search or seizure when arrested, in Plaintiffs' opinion, without probable cause. Thus, the Ahlerses contend on appeal that summary judgment was inappropriate because there are genuine issues of material fact as to whether there was sufficient probable cause to sustain both Ahlers's arrest and the charges of sexual misconduct filed against him. Specifically, Plaintiffs argue that Defendants failed to disclose certain exculpatory evidence (hereinafter "exculpatory evidence" or "*Brady* evidence") prior to the magistrate's probable cause determination. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (requiring the government to disclose material evidence which is favorable to the defendant). Plaintiffs believe this *Brady* evidence consists of: (1) video tape from the male holding area which would have helped to account for Ahlers's whereabouts between 12:30 a.m. and 1:00 a.m.; (2) booking records which may have verified that Ahlers was processing two detainees during the period of time in question; (3) audio tape from the wire Stiltner wore on August 17th; and (4) a daily report of the jail population, cell rosters, and a statement from the officer to whom Stiltner first reported her allegations, all of which might have shown inconsistencies between Stiltner's and Lane's statements. If the foregoing information had been passed on to the magistrate, the Ahlerses assert that

there would not have been sufficient probable cause to arrest Wayne Ahlers. As such, Plaintiffs submit that there is a genuine issue of fact as to whether probable cause truly existed. We reject Plaintiffs' argument, finding instead that Defendants had sufficient probable cause to arrest and charge Ahlers. Furthermore, once Defendants established probable cause, this panel concludes that they were under no duty to continue their investigation and discover the information which Ahlers believes would have exculpated him.

It is abundantly clear that an arrest warrant is valid only if supported by probable cause. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . ."). A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest. *United States v. Amerson*, No. 93–6360, 1994 WL 589626, at *2–3 (6th Cir.1994) (unpublished table decision); *Rainer v. Lis*, No. 92–2436, 1994 WL 33969, at *2 (6th Cir.1994) (unpublished table decision). An eyewitness identification will constitute sufficient probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness 'was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.' " *Id.* at *2. This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity. *United States v. Ingram*, No. 92–5367, 1993 WL 5914, at *2 (6th Cir.) (unpublished table decision), *cert. denied*, 510 U.S. 969, 114 S.Ct. 452, 126 L.Ed.2d 385 (1993).

Thus, Stiltner's accusation that she had been sexually assaulted by Ahlers, standing alone, was sufficient to establish probable cause, especially when bolstered by Sheriff's Department's records which confirm that there was a window of time

within which the alleged sexual assault could have occurred. It appears, then, that in order to sustain their claim that there are genuine issues of fact regarding the existence of probable cause, Plaintiffs would have to allege that the Defendants had reason to think that Stiltner's eyewitness identification was in some way untruthful or unreliable. Plaintiffs, however, put forth no such allegations. In fact, prior to Ahlers's arrest and up until immediately before the preliminary examination, Stiltner had relayed her allegations to both the Washtenaw County Defendants and to Parsons in a consistent manner. Although Plaintiffs wish to make much of the fact that Stiltner was a prostitute and had a substance abuse problem, *see* Appellant's Br. at 24, her status and occupation provide no reason to automatically assume she was dishonest. *See Conner v. United States*, 7 F.2d 313, 314 (9th Cir.1925) ("While there is some conflict in the authorities, the better rule is that a female witness [reputed to be a prostitute] cannot, under ordinary circumstances, be impeached by an attack upon her character for chastity."); *People v. Williams*, 416 Mich. 25, 45, 330 N.W.2d 823 (Mich.1982) ("As with prior sexual conduct evidence, we see no logical relation between a complainant's reputation for prostitution and the character trait of truthfulness or untruthfulness. The law should not recognize any necessary connection between a witness's veracity and her sexual immorality."). Since the Ahlerses have set forth no facts which would support allegations that Stiltner was untruthful, there is no genuine issue of material fact that Defendants, acting on the basis of Stiltner's eyewitness account, had sufficient probable cause with which to arrest and charge Ahlers for sexual assault.

 Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. *Rainer*, 1994 WL 33969, at *3; *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir.1989); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988). In fact, law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss*, 867 F.2d at 263. The facts as initially discovered, *i.e.*, Stiltner's eyewitness statement, provided Defendants with ample probable cause. Accordingly, this panel concludes that once the Washtenaw County Defendants and Parsons had Stiltner's statement establishing probable cause, they had no duty to continue the investigation.

This, however, does not mean that officers may make hasty, unsubstantiated arrests with impunity. Several cases both from this and other circuits, caution against incomplete, poorly conducted investigations. *See, e.g., Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir.1999) (rejecting officer's qualified immunity defense where the officer ignored exculpatory evidence which would have negated a finding of probable cause); *Sevigny v. Dicksey*, 846 F.2d 953, 957–59 (4th Cir.1988) (denying qualified immunity to a police officer who, when faced with two conflicting versions of an event, simply charged plaintiff with two separate, but mutually exclusive, offenses rather than conducting further investigation to ferret out the true course of events); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").

The matter before us, however, is sufficiently distinguishable from the factual circumstances which caused the courts in *Kuehl, Sevigny* and *BeVier* to question whether officers who had performed incompetent investigatory work obtained sufficient probable cause to sustain the respective arrests. In the above cases, officers in the process of determining whether probable cause existed had

knowledge of some evidence which was inculpatory and other evidence which was exculpatory, yet without conducting further investigation, simply concluded probable cause did exist. *See Kuehl*, 173 F.3d at 651 (officer ignored eyewitness testimony known to him which would have exculpated plaintiff); *Sevigny*, 846 F.2d at 957–58 (no reasonable officer would have concluded he or she had probable cause to sustain an arrest when the officer, uncertain about the factual situation, arrested the plaintiff on two separate, but mutually exclusive, offenses); *BeVier*, 806 F.2d at 128 (officer who lacked evidence regarding an essential element of the crime charged and failed to further investigate did not have probable cause). In other words, a rational officer considering the evidence in its totality would have concluded that he or she lacked probable cause, whereas the officers in the above cases concluded probable cause did exist. Our reading of *Kuehl*, *Sevigny* and *BeVier* suggests, then, that officers, in the **process of determining whether probable cause exists**, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.

The matter before us, however, is quite different. In the instant matter, the officers undeniably had sufficient probable cause to sustain Ahlers's arrest with Stiltner's allegations, and Plaintiffs now wish to hold them liable for evidence which they failed to collect and, therefore, of which they were unaware. In this respect, then, the instant case is more analogous to that in *Crisp v. City of Kenton*, No. 97–3192, 1998 WL 180561 (6th Cir.1998) (unpublished table decision), where a panel concluded that a challenged arrest was sup-

ported by probable cause. Crisp, the plaintiff in that case, argued that the officers did not have probable cause to arrest him because there was information which, if the officers had considered it, would have established that there was no probable cause to suspect Crisp of criminal activity. *Id.* at *4. The panel, however, rejected Crisp's argument, reasoning that "on the basis of the information the officers actually had, as opposed to information they could have had if they had looked at Crisp's identification and believed his story, the officers certainly had sufficient information" with which to establish probable cause. *Id.* Likewise, this panel concludes that on the basis of the information known to them, i.e., Stiltner's statement and the window of opportunity, these Defendants established sufficient probable cause to sustain Ahlers's arrest. Although Parsons's investigation certainly was no model of thoroughness and left many reasonable sources of evidence unexplored, on the basis of the facts before us, we find that the district court properly concluded that there were no genuine issues of material fact as to whether Defendants had sufficient probable cause to sustain Ahlers's arrest.[4]

## C. Qualified Immunity

Next, Plaintiffs contend on appeal that, regardless of this panel's conclusions as to whether Wayne Ahlers's arrest was supported by probable cause, Defendants are not entitled to qualified immunity because their conduct of the investigation was not objectively reasonable.

 Section 1983 claims are limited by the qualified immunity exception, such

---

**4.** We are mindful that the Washtenaw County Defendants were only directly involved in investigating Stiltner's complaints against Ahlers for two days, at which point the investigation was turned over to Parsons. It was Parsons who concluded that adequate probable cause existed to submit the allegations to a prosecutor. Technically, then, there could have been two separate inquiries—one for the Washtenaw County Defendants and one for

Parsons—to account for the particular factual circumstances facing each Defendant. For the sake of clarity, however, the panel has chosen to refer to Defendants collectively during its probable cause analysis. Since Stiltner's allegations provide sufficient probable cause with which to sustain Ahlers's arrest, the factual differences between the two sets of Defendants are negligible for this issue.

that a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982). A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, *id.* at 815, 102 S.Ct. at 2737, such that mere negligence or recklessness is insufficient. Accordingly, to successfully remove the cloak of qualified immunity from Defendants, Wayne and Nina Ahlers must establish that Defendants' conduct of the investigation fell below an objective standard of reasonableness.

There are really two separate inquiries here: whether the Washtenaw County Defendants are entitled to qualified immunity and whether Parsons is entitled to qualified immunity. The district court reasoned that the Washtenaw County Defendants only investigated Ahlers during August 17th and 18th, at which point they turned the investigation over to Parsons to avoid any conflicts of interests. Given the short time frame within which the Washtenaw County Defendants handled the investigation of Ahlers, the court did not consider their failure to turn over exculpatory evidence to Parsons unreasonable. The Sheriff's Department had an allegation from an alleged victim, Stiltner, that inappropriate behavior had occurred. By consulting the booking records, they determined that Ahlers was unaccounted for between 12:30 a.m. and 1:00 a.m. and that there was a period of time during which the assault could have occurred. The Washtenaw County Defendants also had in place a reasonable policy which dictated that serious allegations be investigated by a neutral law enforcement agency. Thus, it was very rational for the Washtenaw County Defendants to relay the accusations to Parsons and to turn over the investigation to him. Furthermore, in light of the very short period of time they were responsible for the investi-

gation (*i.e.*, 2 days), it is understandable that they did not fully realize or appreciate the potentially exculpatory nature of some of the evidence.

As to Parsons, the court further held that, although his investigation was flawed, the court did not believe that Parsons acted unreasonably. First, the court determined that he had sufficient probable cause to turn over the evidence he had accumulated to the prosecutor and magistrate. As discussed earlier, Parsons had a statement from Stiltner and no reason to doubt her veracity. Furthermore, the court emphasized that Ahlers's arrest was made subject to an arrest warrant. Thus, Parsons's determination that there was sufficient probable cause to submit the evidence he had collected to a prosecutor was ratified by both the prosecutor's decision to seek an arrest warrant and by a neutral and detached magistrate's decision to issue the warrant. Existing case law establishes that a police officer can only be held liable for requesting a warrant which allegedly led to a false arrest if he "stated a deliberate falsehood or acted with a reckless disregard for the truth. Proof of negligence or innocent mistake is insufficient." *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir.1993). *See also Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (internal citation omitted). The court determined that despite the shortcomings of the investigation, it could not conclude that Parsons acted with reckless disregard for the truth.

■ On appeal, Plaintiffs allege that Defendants failed to gather evidence, failed to interview witnesses at the scene, failed to view the scene, and failed to reconstruct the alleged event. (Appellant's Br. at 44). At best, however, the investigation's lack of thoroughness might support an inference of negligence, but it

does not demonstrate knowing or intentional behavior designed to violate Ahlers's constitutional rights. Consequently, the Ahlerses put forward no facts which raise a genuine issue of material fact that any of the Defendants acted in reckless disregard for the truth and are not entitled to qualified immunity. Accordingly, we adopt the district court's reasoning and conclusions as to this issue, and see no benefit in unduly rehashing this particular matter.

Moreover, since this panel concluded above that Ahlers's arrest was supported by adequate probable cause and, consequently, was constitutionally sound, both Plaintiffs' and Defendants' arguments regarding qualified immunity appear moot. As we hold that sufficient probable cause existed, this necessarily means that the arrest complied with constitutional requirements and that Ahlers was not deprived of a constitutional right. As a result, there is no claim under § 1983, and Defendants have no need for a qualified immunity defense.

### D. State Tort Claims

 Plaintiffs also sought recovery on the basis of assorted state law claims, including conspiracy, false arrest and imprisonment, malicious prosecution, gross negligence, defamation, intentional interference with a business relationship, intentional infliction of emotional distress and loss of consortium. Plaintiffs failed to address their claims for defamation, intentional interference with a business relationship, and loss of consortium in their appellate briefs, hence, we consider these claims waived. *Thaddeus–X v. Blatter*, 175 F.3d 378, 403 n. 18 (6th Cir.1999); *McMurphy v. City of Flushing*, 802 F.2d 191, 198–99 (6th Cir.1986). Furthermore, we find Plaintiffs have failed to raise genuine issues of material fact with respect to their remaining state tort claims.

### Conspiracy

 The Ahlerses contend that Defendants conspired to violate Wayne Ahlers's state law rights by engaging in conduct that led to his false arrest, false imprisonment and malicious prosecution. As in criminal conspiracy, civil conspiracy is an agreement between two or more persons to accomplish some unlawful purpose through concerted activity. *Fenestra Inc. v. Gulf American Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d 36, 48 (Mich.1966); *Temborius v. Slatkin*, 157 Mich.App. 587, 599–600, 403 N.W.2d 821, 827–28 (Mich.Ct.App.1986).

The Ahlerses point simply to the imperfect investigation as proof of a civil conspiracy. Alleging that the investigation was incompetent, however, does not put forth any genuine issues of fact that there was an agreement or plot between Parsons and the Washtenaw County Defendants to arrest and charge Ahlers with a crime he did not commit. Thus, Plaintiffs have failed to allege facts which would state a claim for civil conspiracy.

### False Arrest/False Imprisonment

 Liability for false arrest and false imprisonment attaches only when the claimant is arrested without probable cause. *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218, 327 N.W.2d 893, 894 (Mich.1982); *Tope v. Howe*, 179 Mich.App. 91, 105, 445 N.W.2d 452, 459 (Mich.Ct.App. 1989). As discussed above, Stiltner's eyewitness statement and the inability to account for Ahlers whereabouts for an amount of time within which the alleged assault could have occurred were sufficient to provide Defendants with probable cause. Hence, there is no genuine issue of fact with respect to Plaintiffs' claims for false arrest and false imprisonment.

### Malicious Prosecution

 To sustain a claim for malicious prosecution under Michigan law, Plaintiffs would have to establish that false statements were made to prosecuting officials or facts were willfully concealed. *Bass v. Spitz*, 522 F.Supp. 1343, 1348 (E.D.Mich. 1981).

Plaintiffs argue that they have presented a genuine issue of fact with respect to their malicious prosecution claim by alleging that Defendants initiated a criminal prosecution against Wayne Ahlers knowing that it was not supported by probable cause. The facts set forth by the Ahlerses, at most, show that the investigation was poorly conducted. Although Defendants failed to collect information which Plaintiffs believe would have been exculpatory, Plaintiffs do not appear to set forth any facts which would show that evidence was somehow willfully concealed.

*Gross Negligence/Intentional Infliction of Emotional Distress*

Under Michigan law, gross negligence is defined as conduct so reckless as to demonstrate a substantial lack of concern for whether injury results. MCLA 691.1407(2)(c). Similarly, a plaintiff can recover for intentional infliction of emotional distress only where there is: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602–03, 374 N.W.2d 905, 908–09 (Mich.1985); *Cebulski v. Belleville*, 156 Mich.App. 190, 193–94, 401 N.W.2d 616, 618 (1986).

It appears that Plaintiffs are unable to set forth facts which would support that Defendants' conduct was reckless, thereby proving fatal to both their claims for gross negligence and intentional infliction of emotional distress. The Washtenaw County Defendants were in charge of the investigation for such a limited period of time that their failure to gather and consider certain items of evidence cannot be considered reckless. As to Parsons, although the Ahlerses have set forth facts which would prove Parsons conducted an incomplete investigation, this is insufficient to establish that Parsons recklessly submitted the findings of his investigation to the prosecutor because there was adequate probable cause to sustain Ahlers's arrest.

## III. CONCLUSION

For the foregoing reasons, the opinion and order entered by the Honorable Gerald E. Rosen, U.S. District Judge for the Eastern District of Michigan, granting summary judgment to Defendants is **AFFIRMED.**