Sandra LAMPING, Plaintiff–Appellant,

v.

Bradford WALRAVEN, Defendant–Appellee.

No. 00–3424.

United States Court of Appeals, Sixth Circuit.

March 12, 2002.

Before RYAN and BATCHELDER, Circuit Judges, and LAWSON, District Judge.*

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

BATCHELDER, Circuit Judge.

Sandra Lamping brought this 42 U.S.C. § 1983 action against Ohio Police Sergeant Bradford Walraven, seeking compensatory and punitive damages for an alleged violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Lamping now appeals the district court's order granting summary judgment to Walraven. Finding no merit to her claims, we will affirm the judgment of the district court.

**Statement of Facts**

Though the incident Lamping complains of in this suit happened in June of 1998, this was not her first conflict with the police department of Union Township, Ohio. Two years earlier, in June of 1996, Walraven and other Union Township officers searched Lamping's single-family Union Township home and found contraband that resulted in the drug paraphernalia conviction of Lamping's boyfriend Nick Risilio, Sr. (Risilio), and the drug possession conviction of Risilio's son. Also discovered in that search were non-contraband personal items belonging to Risilio, including clothes, that indicated that Risilio was likely living at the residence. The following year Risilio was convicted and imprisoned for trafficking in methamphetamines, based on a cache of drugs that a separate county investigation had discovered buried just outside the basement window of Lamping's residence.

In May of 1998 one of Walraven's supervisors advised him that an anonymous complaint about Lamping's residence had been reported, alleging that drug traffic was again being operated through the residence; the supervisor told Walraven to investigate. Walraven began watching the house for frequent short-term visitors and other indicators of drug traffic, though his observations were necessarily covert because his face and car were known by those staying at the residence. After two weeks of such surveillance–conducted by driving past Lamping's residence frequently and by viewing the residence from the vantage of an adjacent subdivision–Walraven was convinced that enough short-term traffic was passing through the residence to merit further investigation.

In the early morning hours of June 9, Walraven and another officer retrieved and searched through two bags of trash from outside Lamping's residence, finding three ziplock baggies containing small amounts of a light brown powder that resembled methamphetamine. Walraven had been trained to perform field tests for drugs using a narcotics identification kit (NIK), and he performed two successive tests on the substance in the baggies: both tested positive for methamphetamines. Armed with this information, on June 11 he drafted an affidavit containing the following factual averments:

> Reporting/affiant officer received an anonymous complaint of heavy, short-term traffic at [Lamping's residence]. This can be indicative of drug trafficking.
>
> In the past, the residents at [Lamping's residence] have been arrested and convicted of various drug abuse and drug trafficking charges.
>
> Affiant officer has observed short-term traffic at [Lamping's residence] over the past two weeks.
>
> In the early hours on 6–6–98, affiant and a brother officer removed two bags of trash from curbside at [Lamping's residence]. Both bags had been secured shut with knots and were abandoned at the curb for trash pickup.
>
> On 6–9–98, affiant located mail in the bags addressed to [Lamping's residence]. Also in the bags were three small ziploc bags that contained a light-colored powdery substance.

The plastic baggies were field tested by affiant who is a certified NIK tester. The test was positive for amphetamines. Affiant is an experienced narcotics officer, familiar with the appearance and packaging of illegal substances.

A state judge granted the warrant, and on June 14 Walraven and other officers executed the search after Lamping answered their knock and admitted them to the house. The search turned up two marijuana joints, a baggie with marijuana residue, two marijuana roaches, hemostats, and, in Lamping's car, two rolled-up dollar bills that another officer field-tested and found positive for methamphetamine residue. Walraven ticketed Lamping for the felony possession of drugs, but she was not charged further either for the contraband found in the house search or for the baggies found in the trash search.

Lamping nevertheless took issue with the house search and filed this action, alleging that the search had not been supported by probable cause because most of the statements in the affidavit were false. The statement about frequent traffic to the house was false, she alleged, because though there had been visits to her home, they had not been excessively frequent and the visitors were in fact innocent family members and friends of her son. The statement about residents of her house having in the past "been arrested and convicted of various drug abuse and drug trafficking charges" was false because she had only been charged (and not convicted) of drug abuse; because though her son had been caught with marijuana, he had only been ticketed; and because Risilio (who had been convicted) had only been a frequent overnight guest and never a resident, and anyway he was not around at the time of the search because he was in prison. Lamping also claimed that she always put her trash bags in cans and never on the curb and that she had not for several years bought ziploc baggies, but she later admitted that both of the affidavit's statements to the contrary may have been true.

After this litigation ensued, the parties agreed to have the baggies recovered from Lamping's trash tested in a laboratory. When the tests came back negative for methamphetamines, Lamping further alleged that the laboratory test was admissible to show both that field tests as a rule are unreliable and that Walraven had lied about the results of his two field tests.

The district court, in granting summary judgment to Walraven, found two of Walraven's affidavit statements to be incorrect: first, his statement that "affiant officer received an anonymous complaint" was erroneous because it was in fact Walraven's supervisor who had received the complaint, and Walraven was not sure whether the supervisor had referred to the complaint when he told Walraven to investigate Lamping's residence; and second, the statement that residents of the house "have been arrested and convicted of various drug abuse and drug trafficking charges" was false, because Risilio–the only person who had been convicted of such offenses–was not a resident at the time of the search. Nevertheless, the district court found that even if these statements were excised from the affidavit, it still evidenced sufficient facts to constitute probable cause for the issuance of the warrant. The court dismissed Lamping's allegation that Walraven had lied when he reported that his field tests were positive, holding that "[w]hile Plaintiff has attempted to cast aspersions on certain of the other statements included in the affidavit, she has not introduced evidence that tends to show that they were false or that Defendant knew or believed them to be false when he signed the affidavit."

It is from this judgment that Lamping now appeals, claiming that she is entitled to present the later laboratory results to

the jury and have the jury decide Walraven's credibility with regard to the affidavit's statement that the field tests were positive, as well as with regard to the other statements made in the affidavit.

## Analysis

This court reviews the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Lamping. *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir.1999). It is Lamping's responsibility to bring forward affirmative evidence–something more than a scintilla–upon which a reasonable jury could find that Walraven lacked probable cause in obtaining the warrant at issue here. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, though "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment," *Ahlers*, 188 F.3d at 369, Lamping must nevertheless show that there is evidence, beyond a "metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), that creates a material issue as to justify requiring a jury to decide on Walraven's credibility.

 The district court was correct in finding that even if the two questionable statements are removed from the affidavit, sufficient evidence still existed for a finding of probable cause–though we note that Walraven's statement about learning of a complaint himself should probably not have been excised: the statement was technically true in that Walraven "received" the complaint via his supervisor, and Lamping does not allege that the complaint itself was a fabrication. Additionally, it is clear that if Walraven's field tests incorrectly registered positive, this does not retroactively eliminate probable cause at the time the warrant was issued. *Ma-*

*ryland v. Garrison*, 480 U.S. 79, 85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Probable cause would, however, be eliminated if the statement about the field test results was excised from the affidavit. Thus Lamping's sole hope is to raise a material issue as to whether Walraven's statement about the results was a deliberate lie or was recklessly false, because in this case probable cause would not exist and Walraven would not be protected by qualified immunity. *United States v. Hill*, 142 F.3d 305, 310 (6th Cir.1998) (quoting *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

The mere fact that the laboratory test returned a contrary result does not raise an inference that Walraven was lying when he said his tests came out positive; more evidence is needed. The best Lamping can do is to point to Walraven's erroneous statement that "residents" had been previously convicted–a statement that, given its factual basis, appears to have been a good-faith error. Apart from further evidence of duplicity on Walraven's part, Lamping's allegations amount to speculation, and mere speculation will not overcome a motion for summary judgment. *See Bryant v. Com. of Kentucky*, 490 F.2d 1273, 1275 (6th Cir.1974); *Boruski v. United States*, 803 F.2d 1421, 1428 (7th Cir.1986).

## Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.