**Lopez HIGH, Plaintiff–Appellee,**

v.

**Mark FUCHS; Steven Moran, Defendants–Appellants,**

**Jefferson County Police Department, Defendant.**

No. 02–6227.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 2003.

Thomas E. Clay, Clay, Kenealy, Wagner, Adams & Hall, Louisville, KY, for Plaintiff–Appellee.

Mitchell L. Perry, Jefferson County Attorney's Office, Louisville, KY, for Defendants–Appellants.

Before KEITH, BATCHELDER and CLAY, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendants-appellants Mark Fuchs and Steven Moran, officers with the Jefferson County, Kentucky police department ("Officers"), appeal the district court's order denying their claim to qualified immunity in plaintiff-appellee Lopez High's ("High") lawsuit against the Officers brought under 42 U.S.C. § 1983. On appeal, the Officers argue that, because High failed to plead a

violation of his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, but instead, alleged only that the Officers violated his right to be free from an unreasonable search and seizure under the Fourth Amendment, the district court's finding of probable cause makes the Officers' subjective intent irrelevant and necessitates dismissal of High's complaint on the basis of qualified immunity. Because we find that High sufficiently pled a violation of his rights under the Equal Protection Clause, dismissal on the basis of qualified immunity would be inappropriate, and we will affirm the decision of the district court.

## PROCEDURAL HISTORY

This section 1983 lawsuit arises from a traffic stop in the summer of 2000, which resulted in the Officers' issuing to High, an African–American sergeant with the Louisville Division of Police, a traffic citation for improper vehicle registration and failure to provide proof of insurance coverage. Following the dismissal of the traffic citations,[1] High brought a two-count complaint against the Officers, in both their official and individual capacities, and against the political subdivision of Jefferson County, Kentucky. In count one, High alleged that he was subjected to racial profiling, deprived of his right to be free from unreasonable searches and seizures, and deprived of his right to due process of law, all in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983. In his second count, High brought a claim against Jefferson County for malicious prosecution.

The defendants moved to dismiss both counts of the complaint on sovereign and absolute immunity grounds. On the section 1983 claim, the district court granted the motion as to Jefferson County and the Officers in their official capacity, finding that High failed to point "to anything indicating the existence of any evidence about a policy of racial discrimination or about how the investigation was conducted, or about training or lack thereof. There is nothing to support a claim against the County or against the officers in their official capacities." However, the district court denied the motion as to the Officers individually, finding that the conduct alleged by High (i.e., police officers treating African–Americans differently solely on the basis of race) was clearly prohibited and, and therefore, qualified immunity was improper. On High's malicious prosecution claim, the court found that "there is no question" that High did not have his new registration sticker affixed or have proof of insurance when he was cited, and "[t]hus, there is no question that there was probable cause for the prosecution." The Officers timely appealed the court's denial of their motion seeking qualified immunity as individuals.

## FACTUAL HISTORY

Since this case presents an interlocutory appeal on the question of qualified immunity, we must view the facts as alleged by the plaintiff in his complaint, and determine whether, on these facts, the defendants are entitled to immunity. *Comstock v. McCrary*, 273 F.3d 693, 701 (6th Cir. 2001). According to the complaint, at two o'clock in the morning on July 14, 2000, High's 1994 Nissan automobile had "bro-

---

**1.** Because High is a police sergeant with the Louisville Division of Police, located in Jefferson County, the Jefferson County Attorney's office recused itself from the prosecution of High's Uniform Citation. After the Hardin County Attorney was appointed Special Prosecutor, the parties entered into a stipulation of facts, and the charges were dismissed.

ken down" on Fern Creek Road in Jefferson County, Kentucky. Responding to a call on a suspicious vehicle parked in front of a house, Officers Fuchs and Moran arrived on the scene as a tow truck was servicing High's vehicle. The registration plates displayed on High's vehicle had expired in December of 1999. Although High had renewed the registration on June 27, 2000, he refused to affix the new registration sticker to the license plate when Officer Moran requested that he do so. Additionally, even though High had properly insured his vehicle, the district court found that he failed to provide proper proof of insurance until August 31, 2000. In his complaint, however, High claims that he did provide the Officers with proof of insurance that evening. High also alleges that, when High attempted to cross the street and talk with a companion, Officer Fuchs yelled, "Hey boy, get your F ____ g ass over here," and directed him to place his hands on the hood. The Officers subsequently issued a Uniform Citation to High for violating Kentucky Revised Statute ("KRS") 186.020 (improper registration plates) and KRS 304.39–080 (no proof of insurance). Two weeks later, according to High's complaint, Officer Moran again pulled the plaintiff over for "some pretextual excuse, which was actually another instance of racial profiling." The district court construed High's complaint as a "single act" allegation, because High failed to provide any further information on the second stop, and there was nothing to suggest a connection between the two encounters. The registration and insurance charges were eventually dismissed before High filed his complaint in this action.

## ANALYSIS

*Standard of Review*

We review *de novo* a district court's denial of qualified immunity. *Comstock,*

273 F.3d at 701. "Because the issue of qualified immunity is a legal question, no deference is due the district court's conclusion." *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 998 (6th Cir.1994). "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right 'secured by the Constitution and the laws of the United States' by one acting under color of law." *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir.1999) (citing *Flag Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

*Qualified Immunity*

Qualified immunity, which the Supreme Court has deemed "the best attainable accommodation of [the] competing values" of deterring abuse of power by government officials and vindicating constitutional guarantees on the one hand, and protecting government officials from frivolous suits that may dampen the ardor with which they carry out their jobs on the other, *Harlow v. Fitzgerald,* 457 U.S. 800, 813–14, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727.

A court undertaking a qualified immunity analysis must first determine whether the plaintiff has shown a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly established. *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The right allegedly violated cannot be asserted at a high level of generality, but, instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Court in *Harlow* explained, the "reasonable person," in this instance, is a "reasonably competent public official [who] should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727. To overcome qualified immunity, the right allegedly violated must be so clear that any reasonable public official in the defendant's position would understand that his conduct violated the right: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

We have established that there are two ways in which a plaintiff seeking to overcome the bar of qualified immunity can show that a right was clearly established in the law at the time the alleged violation occurred. First, "a district court within this circuit must be able to 'find binding precedent from the Supreme Court, the Sixth Circuit, or … itself'" that directly establishes the conduct in question as a violation of the plaintiff's rights. *Summar v. Bennett,* 157 F.3d 1054, 1058 (6th Cir. 1998). If no binding precedent is "directly on point," the court may still find a clearly established right if it can discern a generally applicable principle from either binding or persuasive authorities whose "specific application to the relevant controversy" is "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.; accord Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

*Equal Protection Violation*

The central issue in this interlocutory appeal is whether High pled, with suffi-cient particularity, a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment, or if his complaint rests entirely upon his claim for an unreasonable search and seizure. The resolution of this question is obviously important to our decision in this case, because, as the Supreme Court has said, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). If the complaint truly centers on a Fourth Amendment allegation, then the Officers' argument before this court–that the district court's finding of probable cause on the malicious prosecution claim requires reversing the court's denial of qualified immunity–becomes persuasive. If, however, this court finds an Equal Protection claim in High's complaint, the district court's finding of probable cause is not the final word. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 533 (6th Cir.2002) ("[A]n officer's discriminatory motivations for pursuing a course of action can give rise to an Equal Protection claim, even where there are sufficient objective indicia of suspicion to justify the officer's actions under the Fourth Amendment.").

The district court characterized High's claim in equal protection-type language: "High claims that Moran and Fuchs treated him differently because of his race, stopping to investigate, issuing citations, and using racially abusive language." Although High's complaint is close to the line, we agree with the district court and find that it suffices to raise an Equal Protection claim. High's allegation of racial

profiling, when combined with all of the facts contained in the complaint, is just enough to raise a violation of a constitutional right under the Fourteenth Amendment. Because reasonable police officers could not disagree that enforcing laws differently on the basis of race is clearly prohibited, dismissal of High's complaint on the basis of qualified immunity, even with a finding of probable cause for the prosecution of the citation, would be inappropriate. It is for the fact-finder to determine whether or not the Officers did in fact treat High differently because of his race when they issued the Uniform Citation.

### CONCLUSION

Accordingly, for the reasons stated above, we AFFIRM the decision of the district court.