SUTTON, Circuit Judge.
A Franklin filed a § 1983 claim against Officer Donald Fox and two other officers, claiming that they lacked probable cause under Ohio law to arrest him for criminal menacing. The district court denied the officers’ claims of qualified immunity. Because the officers had probable cause as a matter of law to arrest Franklin, we reverse.
I.
On February 28, 2002, A Franklin, a building services worker at Miami University, was cleaning restrooms in Harris Dining Hall. Because Franklin preferred that “other employees not use the restroom while [he] was cleaning it,” he “posted a sign on the bathroom door advising that [he] was cleaning it” and requesting others “to please use a different restroom.” JA 164. Franklin had posted this sign before. Ignoring the request, as he had before, one of Franklin’s coworkers, John Johnston, entered the restroom while Franklin was cleaning it. Franklin asked Johnston to refrain from using the restroom, but Johnston refused.
Frustrated by Johnston’s conduct, Franklin spoke to his manager, Veronica Collopy, about the situation. As they were discussing the problem, Johnston walked by and said that he “was a grown man and didn’t need [Franklin’s] permission to use the restroom.” Id. Franklin began following Johnston and started “screamfing]” at him. JA 95. Franklin then “moved close to Johnston’s face in a threatening manner,” id., and told him that he “should knock the f**k out of him,” id. Franklin eventually returned to work, and Johnston called the Miami University Police Department and “requested police assistance.” JA 113. The department dispatched Officer Fox to the scene.
When Fox arrived, he interviewed Johnston and Collopy. Ater relating the incident to Fox, both witnesses noted that “this was one of the many times that Franklin had threatened coworkers” and that he “had a hot temper.” JA 95. Johnston also stated that “he was fearful for his safety” and that “he believed Franklin was capable of violence.” Id. “It was clear to me,” Fox observed, “that Mr. Johnston took the threat to his safety very serious *511 ly.” Id. “Johnston’s fears were corroborated by Ms. Collopy,” id., who “had serious concerns” that Franklin would harm Johnston, JA 91.
After consulting with his superior officer, Officer Fox arrested Franklin for criminal menacing under Ohio law—a misdemeanor of the fourth degree. See O.R.C. § 2903.22. The arrest occurred within an hour of Franklin’s encounter with Johnston.
Franklin filed a number of claims against Miami University and nine employees of the university. The district court granted summary judgment in favor of all of the defendants on all of the claims save for the false-arrest claim against Officer Fox and against “Officer Young Ayers,” described as a second officer who assisted Fox. (In truth, it appears that plaintiff meant to name two assisting officers— Officer Young and Officer Ayers. See JA 97.) In this interlocutory appeal, the officers submit that they are entitled to qualified immunity.
II.
Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), frames our review of the district court’s disposition of the officers’ qualified-immunity defense. First, we must “determine whether, on the facts alleged, a constitutional violation could be found.” Id. at 207, 121 S.Ct. 2151. If so, we then ask “whether the law clearly established that the officer[s’] conduct was unlawful in the circumstances of the case.” Id. at 202, 121 S.Ct. 2151.
As to the first question, the constitutional question, “[i]t has long been true that the Fourth Amendment requires probable cause for an arrest.” Lyons v. City of Xenia, 417 F.3d 565, 573 (6th Cir.2005). The issue is whether the officers possessed “reasonably trustworthy information ... sufficient to warrant a prudent man in believing” that Franklin violated Ohio’s criminal-menacing statute. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
Under that law, “No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person____” O.R.C. § 2903.22(A). To establish probable cause that Franklin violated the statute, Officer Fox needed trustworthy evidence that Franklin “knowingly” caused the victim (Johnston) “to believe” that he “will cause physical harm” to him. The undisputed record, in our view, shows just that.
Consider what Officer Fox determined through his investigation before he arrested Franklin. The victim told Fox that Franklin said that he “should knock the f**k out of him.” JA 95. And the victim told the officer that “he was fearful for his safety” and that “he believed Franklin was capable of violence.” Id. Collopy, who witnessed the entire event, squarely supported the victim’s account. She told Fox that Franklin “moved close to Johnston’s face in a threatening manner” during the encounter. Id. And she stated that she “had serious concerns” that Franklin would harm Johnston. JA 91. Nor, she noted, was this the first time that Franklin had made such a threat. Both Johnston and Collopy told Officer Fox that “this was one of the many times that Franklin had threatened coworkers” and that he “had a hot temper.” JA 95.
“A law enforcement officer is entitled to rely on an eyewitness identification”—to say nothing of two eyewitness identifications—“to establish adequate probable cause with which to sustain an arrest.” Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.1999); see id. (noting that “since eyewitnesses’ statements are based on first *512 hand observations, they are generally entitled to a presumption of reliability and veracity”). Given the statements of the two eyewitnesses, Johnston and Collopy, Officer Fox possessed probable cause to arrest Franklin. Johnston plainly “believe[d]” that Franklin was going to “physically harm” him, as shown by his words (he was “fearful for [his] safety,” JA 113), and his actions (he “immediately” called the police and “requested police assistance,” id.). Collopy’s ring-side view of the encounter leaves no doubt about the accuracy of Johnston’s observations. In “corroborating]” Johnston’s account, JA 95, Collopy told Officer Fox that Franklin “moved close to Johnston’s face in a threatening manner,” id., and told him that she “had serious concerns” that Franklin would harm Johnston, JA 91. Armed with this information and faced with no contradictory evidence, Officer Fox (and Officers Young and Ayers) had probable cause to arrest Franklin for violating Ohio’s menacing statute.
Franklin offers several contrary arguments, all unpersuasive. He first points out that there is a fact dispute about whether Officer Fox was told that Franklin “should” or “ought to” “knock” Franklin “the f**k out.” Johnston, it is true, told Officer Fox that Franklin used the word “should,” while Collopy told Fox that Franklin used the word “ought to.” But Franklin offers no reason why it would make a difference which helping verb Franklin used; they convey the same meaning. See Webster’s Third New International Dictionary 1599 (2002) (stating that “ ‘ought’ and ‘should’ are often interchangeable”).
Also deficient is Franklin’s reliance on his affidavit in the case indicating that he said that he “could knock the f**k out of [Johnston].” JA 165. As an initial matter, all agree that Officer Fox never interviewed Franklin, so this verbal formulation of the threat was not—and never could have been—presented to him. No less importantly, given the uncontradicted evidence showing that Johnston “believed” that Franklin would “physically harm” him, it is difficult to maintain that the usage of this helping verb over the two other possibilities would have made a difference in the probable-cause calculation. The difficult relationship between the two employees, which predated the incident, and Franklin’s decision to match his words with deeds, by moving aggressively toward Johnston as he spoke, both indicate that the usage of “could” in this physically threatening context still had the potential to create a legitimate fear of physical harm. Whichever helping verb Franklin used, in other words, his other undisputed language and actions sufficed to give the officers probable cause that Johnston believed he was physically at risk.
In claiming that the officers did not sufficiently investigate the incident because they failed to interview him, Franklin is mistaken. Before arresting Franklin, Fox obtained “an eyewitness” account of the incident from the victim, Ahlers, 188 F.3d at 370, and spoke to Collopy who also witnessed the encounter and who supported the victim’s account of what happened. “Once probable cause [was] established,” and the evidence supplied by these witnesses did just that, the officers were “under no duty to investigate further or to look for additional evidence which may exculpate the accused ... nor should a plausible explanation in any sense require the officers] to forego arrest pending further investigation if the facts as initially discovered provide probable cause.” Id. at 371 (internal quotation marks omitted).
“[A]n eyewitness identification,” to be sure, will not suffice to establish probable cause if, “at the time of the arrest, there is *513 an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.” Ahlers, 188 F.3d at 370. But what “apparent reason” was there for discounting Johnston’s account? Officer Fox had not just “an eyewitness identification” (emphasis added), but two eyewitness identifications. The uncontradicted record shows that Officer Fox spoke to Collopy before the arrest, that she “corroborat[ed]” Johnston’s account, JA 95, and that she told Officer Fox the following before the arrest: that Franklin “moved close to Johnston’s face in a threatening manner,” id., that she “had serious concerns” that Franklin would harm Johnston, JA 91, and that Franklin has an “explosive personality” and had created a “hostile” environment at the university, JA 94. At the time, “she was gravely concerned that [Franklin] would harm [Johnston]” and she “believe[d] that he would have done so if [she] had not been present.” JA 90.
That Collopy recounted some of this information in an affidavit filed “after she was named as a defendant in the instant lawsuit,” Dissent at 517 n. 2, is of no moment—and hardly unusual to boot. The same can be said of Franklin’s affidavit, which also was submitted after the lawsuit was filed—a point that presumably explains why Franklin does not make this argument. Given Collopy’s corroboration of the verbally and physically threatening manner in which Franklin approached Johnston, it also is hard to see why Johnston’s verbal response to Franklin’s threat—“[D]id you hear that”? JA 94; see Dissent at 4—gave Officer Fox an “apparent reason” to believe that Johnston was lying. What after all is wrong with a victim confirming what happened with an eyewitness before calling the police? Nothing, we respectfully submit, and certainly nothing that casts doubt on the uncontradicted testimony of these two eyewitnesses. Lacking any exculpatory evidence that called into question the accounts of these witnesses, the officers had no duty to interview Franklin once probable cause had been established.
Neither does the record support the contention that Johnston was “the instigator of the conflict” who somehow had this coming to him. Dissent at 3. This was not Franklin’s first disagreement with a fellow employee who sought to use a restroom that Franklin was cleaning. As Franklin himself acknowledged, he had had similar problems with other employees. See JA 164; cf. id. at 91. The common denominator in all of these conflicts was Franklin, not Johnston. Either way, whether the underlying source of the disagreement was Franklin or Johnston, Franklin had no license to threaten physical harm to Johnston—which is what two witnesses told Officer Fox had happened.
Nor, contrary to Franklin’s contention, see App’ee Br. at 25-28, does it make a difference whether he was guilty of menacing. The question is whether the officers had probable cause that he engaged in menacing. And that is why, contrary to the dissent’s contention, see Dissent at 2-3, neither State v. Denis, 112 Ohio App.3d 397, 678 N.E.2d 996 (1996), nor State v. Dechant, No. 9406, 1985 WL 4771 (Ohio Ct.App. Dec.19, 1985), advances Franklin’s position. Both cases did not involve probable-cause determinations. They instead considered whether beyond-a-reasonable-doubt proof supported jury verdicts under the statute. Worse, they involved encounters in which the conduct of the alleged victims undermined any claim that they felt physically threatened. In Denis, “the complainant himself testified that he did not feel threatened by [the] appellant’s claim” and “laughed off the threat.” 678 *514 N.E.2d at 998. In Dechant, the court found the record “totally devoid of any evidence that complainant believed that defendant would cause physical harm to his person or property.” 1985 WL 4771, at *2-3. Just the opposite is true in this case. Given the totality of circumstances reported to the officers during their investigation, they could reasonably conclude that they had probable cause to arrest Franklin.
III.
For these reasons, we reverse.