NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0018n.06
Filed: January 8, 2007

No. 05-4445

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AL FRANKLIN, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| MIAMI UNIVERSITY, et al., | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendants, | ) | |
| | ) | |
| DONALD FOX; YOUNG; AYERS, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: CLAY and SUTTON, Circuit Judges; and SHARP, District Judge.[*]

SUTTON, Circuit Judge. Al Franklin filed a § 1983 claim against Officer Donald Fox and two other officers, claiming that they lacked probable cause under Ohio law to arrest him for criminal menacing. The district court denied the officers' claims of qualified immunity. Because the officers had probable cause as a matter of law to arrest Franklin, we reverse.

I.

---

[*] The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

On February 28, 2002, Al Franklin, a building services worker at Miami University, was cleaning restrooms in Harris Dining Hall. Because Franklin preferred that "other employees not use the restroom while [he] was cleaning it," he "posted a sign on the bathroom door advising that [he] was cleaning it" and requesting others "to please use a different restroom." JA 164. Franklin had posted this sign before. Ignoring the request, as he had before, one of Franklin's coworkers, John Johnston, entered the restroom while Franklin was cleaning it. Franklin asked Johnston to refrain from using the restroom, but Johnston refused.

Frustrated by Johnston's conduct, Franklin spoke to his manager, Veronica Collopy, about the situation. As they were discussing the problem, Johnston walked by and said that he "was a grown man and didn't need [Franklin's] permission to use the restroom." *Id.* Franklin began following Johnston and started "scream[ing]" at him. JA 95. Franklin then "moved close to Johnston's face in a threatening manner," *id.*, and told him that he "should knock the f**k out of him," *id.* Franklin eventually returned to work, and Johnston called the Miami University Police Department and "requested police assistance." JA 113. The department dispatched Officer Fox to the scene.

When Fox arrived, he interviewed Johnston and Collopy. After relating the incident to Fox, both witnesses noted that "this was one of the many times that Franklin had threatened coworkers" and that he "had a hot temper." JA 95. Johnston also stated that "he was fearful for his safety" and that "he believed Franklin was capable of violence." *Id.* "It was clear to me," Fox observed, "that

Mr. Johnston took the threat to his safety very seriously." *Id*. "Johnston's fears were corroborated by Ms. Collopy," *id*., who "had serious concerns" that Franklin would harm Johnston, JA 91.

After consulting with his superior officer, Officer Fox arrested Franklin for criminal menacing under Ohio law—a misdemeanor of the fourth degree. *See* O.R.C. § 2903.22. The arrest occurred within an hour of Franklin's encounter with Johnston.

Franklin filed a number of claims against Miami University and nine employees of the university. The district court granted summary judgment in favor of all of the defendants on all of the claims save for the false-arrest claim against Officer Fox and against "Officer Young Ayers," described as a second officer who assisted Fox. (In truth, it appears that plaintiff meant to name *two* assisting officers—Officer Young and Officer Ayers. *See* JA 97.) In this interlocutory appeal, the officers submit that they are entitled to qualified immunity.

II.

*Saucier v. Katz*, 533 U.S. 194 (2001), frames our review of the district court's disposition of the officers' qualified-immunity defense. First, we must "determine whether, on the facts alleged, a constitutional violation could be found." *Id*. at 207. If so, we then ask "whether the law clearly established that the officer[s'] conduct was unlawful in the circumstances of the case." *Id*. at 202.

As to the first question, the constitutional question, "[i]t has long been true that the Fourth Amendment requires probable cause for an arrest." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). The issue is whether the officers possessed "reasonably trustworthy information . . .

sufficient to warrant a prudent man in believing" that Franklin violated Ohio's criminal-menacing statute. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Under that law, "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person . . . ." O.R.C. § 2903.22(A). To establish probable cause that Franklin violated the statute, Officer Fox needed trustworthy evidence that Franklin "knowingly" caused the victim (Johnston) "to believe" that he "will cause physical harm" to him. The undisputed record, in our view, shows just that.

Consider what Officer Fox determined through his investigation before he arrested Franklin. The victim told Fox that Franklin said that he "should knock the f**k out of him." JA 95. And the victim told the officer that "he was fearful for his safety" and that "he believed Franklin was capable of violence." *Id.* Collopy, who witnessed the entire event, squarely supported the victim's account. She told Fox that Franklin "moved close to Johnston's face in a threatening manner" during the encounter. *Id.* And she stated that she "had serious concerns" that Franklin would harm Johnston. JA 91. Nor, she noted, was this the first time that Franklin had made such a threat. Both Johnston and Collopy told Officer Fox that "this was one of the many times that Franklin had threatened coworkers" and that he "had a hot temper." JA 95.

"A law enforcement officer is entitled to rely on an eyewitness identification"—to say nothing of two eyewitness identifications—"to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *see id.* (noting that "since

eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity"). Given the statements of the two eyewitnesses, Johnston and Collopy, Officer Fox possessed probable cause to arrest Franklin. Johnston plainly "believe[d]" that Franklin was going to "physically harm" him, as shown by his words (he was "fearful for [his] safety," JA 113), and his actions (he "immediately" called the police and "requested police assistance," *id*.). Collopy's ring-side view of the encounter leaves no doubt about the accuracy of Johnston's observations. In "corroborat[ing]" Johnston's account, JA 95, Collopy told Officer Fox that Franklin "moved close to Johnston's face in a threatening manner," *id*., and told him that she "had serious concerns" that Franklin would harm Johnston, JA 91. Armed with this information and faced with no contradictory evidence, Officer Fox (and Officers Young and Ayers) had probable cause to arrest Franklin for violating Ohio's menacing statute.

Franklin offers several contrary arguments, all unpersuasive. He first points out that there is a fact dispute about whether Officer Fox was told that Franklin "should" or "ought to" "knock" Franklin "the f**k out." Johnston, it is true, told Officer Fox that Franklin used the word "should," while Collopy told Fox that Franklin used the word "ought to." But Franklin offers no reason why it would make a difference which helping verb Franklin used; they convey the same meaning. *See* Webster's Third New International Dictionary 1599 (2002) (stating that "'ought' and 'should' are often interchangeable").

Also deficient is Franklin's reliance on his affidavit in the case indicating that he said that he "*could* knock the f**k out of [Johnston]." JA 165. As an initial matter, all agree that Officer Fox

never interviewed Franklin, so this verbal formulation of the threat was not—and never could have been—presented to him. No less importantly, given the uncontradicted evidence showing that Johnston "believed" that Franklin would "physically harm" him, it is difficult to maintain that the usage of this helping verb over the two other possibilities would have made a difference in the probable-cause calculation. The difficult relationship between the two employees, which predated the incident, and Franklin's decision to match his words with deeds, by moving aggressively toward Johnston as he spoke, both indicate that the usage of "could" in this physically threatening context still had the potential to create a legitimate fear of physical harm. Whichever helping verb Franklin used, in other words, his other undisputed language and actions sufficed to give the officers probable cause that Johnston believed he was physically at risk

In claiming that the officers did not sufficiently investigate the incident because they failed to interview him, Franklin is mistaken. Before arresting Franklin, Fox obtained "an eyewitness" account of the incident from the victim, *Ahlers*, 188 F.3d at 370, and spoke to Collopy who also witnessed the encounter and who supported the victim's account of what happened. "Once probable cause [was] established," and the evidence supplied by these witnesses did just that, the officers were "under no duty to investigate further or to look for additional evidence which may exculpate the accused . . . nor should a plausible explanation in any sense require the officer[s] to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id*. at 371 (internal quotation marks omitted).

"[A]n eyewitness identification," to be sure, will not suffice to establish probable cause if, "at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, 188 F.3d at 370. But what "apparent reason" was there for discounting Johnston's account? Officer Fox had not just "*an* eyewitness identification" (emphasis added), but two eyewitness identifications. The uncontradicted record shows that Officer Fox spoke to Collopy before the arrest, that she "corroborat[ed]" Johnston's account, JA 95, and that she told Officer Fox the following *before* the arrest: that Franklin "moved close to Johnston's face in a threatening manner," *id*., that she "had serious concerns" that Franklin would harm Johnston, JA 91, and that Franklin has an "explosive personality" and had created a "hostile" environment at the university, JA 94. At the time, "she was gravely concerned that [Franklin] would harm [Johnston]" and she "believe[d] that he would have done so if [she] had not been present." JA 90.

That Collopy recounted some of this information in an affidavit filed "after she was named as a defendant in the instant lawsuit," Dissent at 6 n.2, is of no moment—and hardly unusual to boot. The same can be said of Franklin's affidavit, which also was submitted after the lawsuit was filed—a point that presumably explains why Franklin does not make this argument. Given Collopy's corroboration of the verbally and physically threatening manner in which Franklin approached Johnston, it also is hard to see why Johnston's verbal response to Franklin's threat—"[D]id you hear that"? JA 94; *see* Dissent at 4—gave Officer Fox an "apparent reason" to believe that Johnston was lying. What after all is wrong with a victim confirming what happened with an eyewitness before

calling the police? Nothing, we respectfully submit, and certainly nothing that casts doubt on the uncontradicted testimony of these two eyewitnesses. Lacking any exculpatory evidence that called into question the accounts of these witnesses, the officers had no duty to interview Franklin once probable cause had been established.

Neither does the record support the contention that Johnston was "the instigator of the conflict" who somehow had this coming to him. Dissent at 3. This was not Franklin's first disagreement with a fellow employee who sought to use a restroom that Franklin was cleaning. As Franklin himself acknowledged, he had had similar problems with other employees. *See* JA 164; *cf. id.* at 91. The common denominator in all of these conflicts was Franklin, not Johnston. Either way, whether the underlying source of the disagreement was Franklin or Johnston, Franklin had no license to threaten physical harm to Johnston—which is what two witnesses told Officer Fox had happened.

Nor, contrary to Franklin's contention, *see* App'ee Br. at 25–28, does it make a difference whether he was *guilty* of menacing. The question is whether the officers had probable cause that he engaged in menacing. And that is why, contrary to the dissent's contention, *see* Dissent at 2–3, neither *State v. Dennis*, 678 N.E.2d 996 (Ohio Ct. App. 1996), nor *State v. Dechant*, No. 9406, 1985 WL 4771 (Ohio Ct. App. Dec. 19, 1985), advances Franklin's position. Both cases did not involve probable-cause determinations. They instead considered whether *beyond-a-reasonable-doubt* proof supported jury verdicts under the statute. Worse, they involved encounters in which the conduct of the alleged victims undermined any claim that they felt physically threatened. In *Denis*, "the

complainant himself testified that he did not feel threatened by [the] appellant's claim" and "laughed off the threat." 678 N.E.2d at 998. In *Dechant*, the court found the record "totally devoid of any evidence that complainant believed that defendant would cause physical harm to his person or property." 1985 WL 4771, at *2–3. Just the opposite is true in this case. Given the totality of circumstances reported to the officers during their investigation, they could reasonably conclude that they had probable cause to arrest Franklin.

III.

For these reasons, we reverse.

No. 05-4445
*Franklin v. Miami Univ., et al.*

**CLAY, Circuit Judge**, **dissenting**. Officer Fox ignored exculpatory facts suggesting that Franklin had not committed the crime of menacing when he determined that he had probable cause to arrest Franklin. The record is replete with evidence from which a jury could conclude that the sum of what transpired between Johnston and Franklin was simply an argument which did not leave Johnston feeling threatened. Because a reasonable jury could look at the totality of the circumstances and conclude that probable cause did not exist, I would affirm the decision of the district court.

I agree with the majority that, under the law of this Circuit, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). A suspect accused of a crime possesses a strong motive to lie, and if every suspect's exculpating story had to be independently verified by police, an accused could avoid arrest "simply by claiming 'it wasn't me.'" *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Probable cause is not equivalent to proof beyond a reasonable doubt, and the law requires only a "fair probability" that an individual has committed a crime before allowing that individual to suffer the loss of liberty that accompanies an arrest. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).

The rule that there is no duty to conduct a further investigation after probable cause is established, however, coexists with the tempering rule that police officers cannot cherry-pick facts in determining that probable cause exists. "Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

- 10 -

When facts that suggest that a defendant did not commit the crime are known to an officer, those facts cannot be ignored in making the probable cause determination. *Ahlers*, 188 F.3d at 371-72; *see also Gardenhire*, 205 F.3d at 318 (requiring probable cause to be determined at the time the arrest occurred because the factors that determined probable cause shifted as the day went on); *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." (citing *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988))). A contrary rule would undermine the liberty interests protected by the Fourth Amendment by "leav[ing] law-abiding citizens at the mercy of the . . . whim or caprice" of officers who could act on their subjective compilation of the facts, without regard to the objective realities of the situation. *Cf. Brinegar v. United States*, 338 U.S. 160, 176  (1949).

In the case before us, Franklin was convicted of menacing under Ohio Revised Code § 2903.22(A). Under Ohio law, menacing has three elements: "(1) knowingly, (2) causing another to believe, (3) that the offender will cause physical harm to the person or property of such other person or a member of his immediate family." *Fairfield v. McRoberts*, 654 N.E.2d 370, 371 (Ohio Ct. App. 1995). Verbalized expressions of anger will not constitute a violation of the menacing statute if they do not cause the victim to feel threatened. *See State v. Denis*, 678 N.E.2d 996, 998 (Ohio. Ct. App. 1996). On similar facts to the instant case, the Ohio Court of Appeals in *State v. Dechant* found that a jury verdict convicting a defendant of menacing could not stand because there was insufficient proof that the complainant felt threatened. *State v. Dechant*, No. 9406, 1985 WL 4771, at *1 (Ohio

No. 05-4445
*Franklin v. Miami Univ., et al.*

Ct. App. Dec. 19, 1985) (unpublished). In *Dechant*, the defendant and the complainant were arguing over the defendant's plowing of snow onto the complainant's property. *Id.* The defendant, who was within arm's length of the complainant, said in a loud voice, "'why, I *could* beat you to death.'" *Id.* The complainant replied, "'well, possibly you can, you're a big man, but this is not the place to talk about it,'" and walked away. *Id.* Because of the absence of sufficient evidence for the jury to conclude that the complainant felt threatened, the conviction for menacing could not stand. *Id.*; *see also Denis*, 678 N.E.2d at 998 (overturning menacing conviction where complainant laughed off defendant's threat). The majority claims that these cases do not advance Franklin's position because they "do not involve probable-cause determinations." Maj. Op. at 8. In order for Franklin's arrest to be constitutional, however, the facts must demonstrate that there was probable cause to believe that Franklin was guilty of violating O.R.C. § 2903.22(A), the contours of which are defined by the Ohio courts. Thus, the fact that Ohio courts have held that analogous facts do not as a matter of law support a conviction for menacing is highly relevant to the inquiry of whether there was probable cause to arrest Franklin.

Here, Officer Fox concluded that there was probable cause to arrest Franklin in spite of evidence that Johnston never felt threatened. Officer Fox failed to consider Johnston's role as the instigator of the conflict. The majority claims–somewhat incredibly–that the record does not support this contention. This claim is belied by the record. Collopy's statement to the police reports that Franklin approached her and needed to talk, and that Franklin was upset. Collopy's statement also suggests that Franklin had taken the previous interaction with Johnston personally, because he told

Collopy that "if people have a problem with [me], they could tell [me]." J.A. at 257. There is nothing to suggest that Franklin was being aggressive in any way at this time. At this point, Johnston states that he "overheard [Franklin] complaining to [Collopy] about me." J.A. at 259. Johnston responded by interrupting the meeting that Franklin had commenced with Collopy to tell Franklin that he "was a grown man and [Johnston] didn't need [Franklin's] permission to use [the restroom] and that [Franklin] wasn't cleaning it anyway because [Johnston] saw [Franklin] reading a newspaper." J.A. at 259. Franklin "immediately became furious." J.A. at 259. All of these facts were before Officer Fox at the time that he chose to arrest Franklin. From this evidence, a jury could easily conclude that Johnston instigated the conflict.

The fact that Johnston instigated the conflict is important for two reasons. First, it undercuts Johnston's statement that he was fearful for his safety during the incident because Franklin was capable of violence. Second, Johnston's instigation of the event supports the view, as the district court thought was supported by the facts, that Franklin was "letting off steam or 'verbalizing anger' but did not express the threat of some future physical harm to Mr. Johnston." *Franklin v. Miami Univ.*, No. 1:03-CV-00011, 2005 WL 2397703, at *7 (S.D. Ohio Sept. 28, 2005) (unpublished). I agree with the majority that the fact that Johnston instigated the conflict does not give Franklin "license to threaten physical harm." Maj. Op. at 8. Rather, the fact that Johnston instigated the conflict instead goes to the likelihood that Franklin caused Johnston to be physically afraid for his safety.

- 13 -

Officer Fox also disregarded evidence tending to show that Johnston called the police to report the incident for the purpose of causing Franklin trouble, not because he felt threatened. According to both Johnston and Collopy, Johnston's immediate reaction to Franklin's allegedly threatening statement was to ask Collopy if she had heard it. This is not the reaction one expects from a person who feels threatened. A person who truly felt threatened might flee, ask the offender to calm down, or attempt to convince the offender to not hurt him. A threatened person might alternatively strike back, either verbally or with preemptive violence. *Cf. State v. Bayer*, 656 N.E.2d 1314, 1321 (Ohio Ct. App. 1995) ("The rationale for [not requiring the defendant to be capable of carrying out the threat] is that . . . the victim may be impelled to violence to counter what he believes to be a real threat." (quoting Committee Comment to O.R.C. § 2903.21)). Johnston reacted with none of these responses. Instead, Johnston sought to ensure that he had a witness to what Franklin said, and then told Franklin that he was going to call the police, exclaiming that Franklin had threatened him.[**] In light of these circumstances, the fact that Franklin never expressed a present intent to harm Johnston, instead limiting his violent words with "could," "should," or "ought" is especially significant, because it reinforces the impression that Franklin was not presently expressing a desire to harm Johnston. All these facts were known to Officer Fox at the time he arrested

---

[**] The majority rhetorically asks "What after all is wrong with a victim confirming what happened with an eyewitness before calling the police?" Maj. Op. at 7-8. I agree with the majority's answer that nothing is wrong with this. This argument, however, begs the question. Johnston is a victim of menacing *only if* he was placed in fear of his safety–and the majority does not dispute that this reaction is inconsistent with fear.

Franklin.  Given this total mix of information, a reasonable jury could conclude that the facts before Officer Fox did not amount to probable cause.

As the majority notes, "[a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, 188 F.3d at 370 (internal quotation marks and citation omitted).  Here, Johnston had a motive to lie.  On the view of the facts most favorable to Franklin, as we must accept for purposes of this appeal, Johnston participated in a heated argument with Franklin, which Johnston provoked by making a condescending remark to Franklin.  This created a motive for Johnston to have Franklin arrested, namely, to get the better of a person towards whom Johnston presently felt animosity.  Moreover, Johnston was the only witness who provided Officer Fox with information which suggested that Johnston believed that Franklin would cause him physical harm–a necessary element of the crime of menacing.<sup>***</sup>  As discussed above–and

---

*** The majority's assertion to the contrary notwithstanding, only Johnston provided Officer Fox with any information that suggested that Johnston believed that Franklin would cause him physical harm. The majority claims that Collopy's statements that Franklin "moved close to Johnston's face in a threatening manner" and her "serious concerns that there would be fighting" demonstrated a fear on the part of Johnston.  This argument ignores the unmistakably clear requirement of O.R.C. § 2903.22(A) that the *victim* feel threatened. *See, e.g.*, *Denis*, 678 N.E.2d at 998.  As discussed above, the menacing statute is not violated where the victim does not feel threatened, even if the same conduct might make another person feel threatened.  In this case, only Johnston provided Officer Fox with evidence of his fear, and this testimonial evidenced was belied by his conduct, which he and Collopy corroborated.

Collopy states in her affidavit, which was written after she was named as a defendant in the instant lawsuit, that she believed that Franklin "knowingly caused Mr. Johnston to believe that Mr. Franklin would cause physical harm to Mr. Johnston.  It appeared to me that Mr. Johnston was

this point is crucial–Johnston's *conduct* can reasonably be interpreted as inconsistent with his professed belief that Franklin would cause him physical harm, thereby giving Officer Fox a reason to disbelieve Johnston's account of his fear. When an officer confronts a single witness to a crime (or an element of a crime), and that witness has a motive to lie, and the facts that the witness reports to the officer suggest that the witness might in fact be lying, then that single witness account does not so conclusively equal probable cause that a jury could not find otherwise. *See Gardenhire*, 205 F.3d at 315-17 (allegation that complainant's property had been stolen and fact that stolen property was seen in accuseds' store window did not give rise to probable cause where other evidence suggested that no theft occurred).

Instead of arresting Franklin, there are several steps that Officer Fox could have taken to ensure that probable cause existed. An obvious step would have been to talk to Franklin. Although in this case, the facts as relayed by Franklin may have tended to exculpate him, in other cases, a potential defendant may make statements confirming the genuineness of the threat, thereby

---

genuinely concerned for his own physical safety." J.A. at 91. She also states that she was "gravely concerned that [Franklin] would harm Johnston." She does not state that she told these facts to Officer Fox, and her statement taken on the day of the incident is devoid of any such allegation. The majority claims that this fact is "of no moment." Maj. Op. at 7. This argument misses the point: Probable cause must be determined from the point of view of the officer *at the time of the arrest*. *Swiecicki v. Delgado*, 463 F.3d 489, 499 (6th Cir. 2006) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). Thus, the fact that Collopy does not claim to have told these facts to Officer Fox is not "of no moment;" it is crucial.

Although Officer Fox, in his affidavit, states that "Mr. Johnston's fears were corroborated by Ms. Collopy," he gives no details as to how or when Collopy corroborated those fears, and offers no specific facts. This vague and conclusory statement does not provide any appreciable support to Officer Fox, especially considering the absence of any evidence of Johnston's fear in Collopy's statement to the police made at the time of the incident.

strengthening the inference that the complainant felt threatened. Alternatively, Officer Fox could have questioned Johnston or Collopy about the exculpatory facts, and if they provided a satisfactory explanation, Officer Fox could have proceeded to arrest Franklin. There is no evidence that Officer Fox took either of these steps.

Of course, a jury could find that these facts amounted to probable cause. Probable cause in a § 1983 matter is a question for the jury unless there is only one reasonable determination. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)). The majority, however, deprives a jury of the opportunity to make this determination, and forecloses the possibility that the jury could view the case as Franklin does: As an instance where Franklin released his anger through words, and Johnston acted upon his anger by instigating a baseless and damaging prosecution against Franklin. Officer Fox knew facts suggesting that this was the true nature of the altercation. The jury should have been allowed to determine whether these facts were sufficiently compelling to require the conclusion that Officer Fox acted unreasonably in seizing Franklin. I respectfully dissent, and would affirm the judgment of the district court.