CLAY, Circuit Judge,
dissenting.
Officer Fox ignored exculpatory facts suggesting that Franklin had not committed the crime of menacing when he determined that he had probable cause to arrest Franklin. The record is replete with evidence from which a jury could conclude that the sum of what transpired between Johnston and Franklin was simply an argument which did not leave Johnston feeling threatened. Because a reasonable jury could look at the totality of the circumstances and conclude that probable cause did not exist, I would affirm the decision of the district court.
I agree with the majority that, under the law of this Circuit, “[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.” Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir.1999). A suspect accused of a crime possesses a strong motive to lie, and if every suspect’s exculpating story had to be independently verified by police, an accused could avoid arrest “simply by claiming ‘it wasn’t me.’ ” Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir.1988). Probable cause is not equivalent to proof beyond a reasonable doubt, and the law requires only a “fair probability” that an individual has committed a crime before allowing that individual to suffer the loss of liberty that accompanies an arrest. See Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir.2002).
The rule that there is no duty to conduct a further investigation after probable cause is established, however, coexists with the tempering rule that police officers cannot cherry-pick facts in determining that probable cause exists. “Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest.” Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir.2000). When facts that suggest that a defendant did not commit the crime are known to an officer, those facts cannot be ignored in making the probable cause determination. Ahlers, 188 F.3d at 371-72; see also Gardenhire, 205 F.3d at 318 (requiring probable cause to be determined at the time the arrest occurred because the factors that determined probable cause shifted as the day went on); Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir.1999) (“An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.” (citing Bigford v. Taylor, 834 F.2d 1213, 1218 (5th Cir.1988))). A contrary rule would undermine the liberty interests protected by the Fourth Amendment by “leaving] law-abiding citizens at the mercy of the ... whim or caprice” of officers who could act on their subjective compilation of the facts, without regard to the objective realities of the situation. Cf. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
In the case before us, Franklin was convicted of menacing under Ohio Revised Code § 2903.22(A). Under Ohio law, me *515 nacing has three elements: “(1) knowingly, (2) causing another to believe, (3) that the offender will cause physical harm to the person or property of such other person or a member of his immediate family.” Fairfield v. McRoberts, 100 Ohio App.3d 476, 654 N.E.2d 370, 371 (1995). Verbalized expressions of anger will not constitute a violation of the menacing statute if they do not cause the victim to feel threatened. See State v. Denis, 112 Ohio App.3d 397, 678 N.E.2d 996, 998 (1996). On similar facts to the instant case, the Ohio Court of Appeals in State v. Dechant found that a jury verdict convicting a defendant of menacing could not stand because there was insufficient proof that the complainant felt threatened. State v. Dechant, No. 9406, 1985 WL 4771, at *1 (Ohio Ct.App. Dec.19, 1985) (unpublished). In Dechant, the defendant and the complainant were arguing over the defendant’s plowing of snow onto the complainant’s property. Id. The defendant, who was within arm’s length of the complainant, said in a loud voice, “ “why, I could beat you to death.’ ” Id. The complainant replied, “ “well, possibly you can, you’re a big man, but this is not the place to talk about it,”’ and walked away. Id. Because of the absence of sufficient evidence for the jury to conclude that the complainant felt threatened, the conviction for menacing could not stand. Id.; see also Denis, 678 N.E.2d at 998 (overturning menacing conviction where complainant laughed off defendant’s threat). The majority claims that these cases do not advance Franklin’s position because they “do not involve probable-cause determinations.” Maj. Op. at 513. In order for Franklin’s arrest to be constitutional, however, the facts must demonstrate that there was probable cause to believe that Franklin was guilty of violating O.R.C. § 2903.22(A), the contours of which are defined by the Ohio courts. Thus, the fact that Ohio courts have held that analogous facts do not as a matter of law support a conviction for menacing is highly relevant to the inquiry of whether there was probable cause to arrest Franklin.
Here, Officer Fox concluded that there was probable cause to arrest Franklin in spite of evidence that Johnston never felt threatened. Officer Fox failed to consider Johnston’s role as the instigator of the conflict. The majority claims—somewhat incredibly—that the record does not support this contention. This claim is belied by the record. Collopy’s statement to the police reports that Franklin approached her and needed to talk, and that Franklin was upset. Collopy’s statement also suggests that Franklin had taken the previous interaction with Johnston personally, because he told Collopy that “if people have a problem with [me], they could tell [me].” J.A. at 257. There is nothing to suggest that Franklin was being aggressive in any way at this time. At this point, Johnston states that he “overheard [Franklin] complaining to [Collopy] about me.” J.A. at 259. Johnston responded by interrupting the meeting that Franklin had commenced with Collopy to tell Franklin that he “was a grown man and [Johnston] didn’t need [Franklin’s] permission to use [the restroom] and that [Franklin] wasn’t cleaning it anyway because [Johnston] saw [Franklin] reading a newspaper.” J.A. at 259. Franklin “immediately became furious.” J.A. at 259. All of these facts were before Officer Fox at the time that he chose to arrest Franklin. From this evidence, a jury could easily conclude that Johnston instigated the conflict.
The fact that Johnston instigated the conflict is important for two reasons. First, it undercuts Johnston’s statement that he was fearful for his safety during the incident because Franklin was capable of violence. Second, Johnston’s instigation *516 of the event supports the view, as the district court thought was supported by the facts, that Franklin was “letting off steam or ‘verbalizing anger’ but did not express the threat of some future physical harm to Mr. Johnston.” Franklin v. Miami Univ., No. 1:03-CV-00011, 2005 WL 2397703, at *7 (S.D.Ohio Sept.28, 2005) (unpublished). I agree with the majority that the fact that Johnston instigated the conflict does not give Franklin “license to threaten physical harm.” Maj. Op. at 513. Rather, the fact that Johnston instigated the conflict instead goes to the likelihood that Franklin caused Johnston to be physically afraid for his safety.
Officer Fox also disregarded evidence tending to show that Johnston called the police to report the incident for the purpose of causing Franklin trouble, not because he felt threatened. According to both Johnston and Collopy, Johnston’s immediate reaction to Franklin’s allegedly threatening statement was to ask Collopy if she had heard it. This is not the reaction one expects from a person who feels threatened. A person who truly felt threatened might flee, ask the offender to calm down, or attempt to convince the offender to not hurt him. A threatened person might alternatively strike back, either verbally or with preemptive violence. Cf. State v. Bayer, 102 Ohio App.3d 172, 656 N.E.2d 1314, 1321 (1995) (“The rationale for [not requiring the defendant to be capable of carrying out the threat] is that ... the victim may be impelled to violence to counter what he believes to be a real threat.” (quoting Committee Comment to O.R.C. § 2903.21)). Johnston reacted with none of these responses. Instead, Johnston sought to ensure that he had a witness to what Franklin said, and then told Franklin that he was going to call the police, exclaiming that Franklin had threatened him.** In light of these circumstances, the fact that Franklin never expressed a present intent to harm Johnston, instead limiting his violent words with “could,” “should,” or “ought” is especially significant, because it reinforces the impression that Franklin was not presently expressing a desire to harm Johnston. All these facts were known to Officer Fox at the time he arrested Franklin. Given this total mix of information, a reasonable jury could conclude that the facts before Officer Fox did not amount to probable cause.
As the majority notes, “[a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.” Ahlers, 188 F.3d at 370 (internal quotation marks and citation omitted). Here, Johnston had a motive to lie. On the view of the facts most favorable to Franklin, as we must accept for purposes of this appeal, Johnston participated in a heated argument with Franklin, which Johnston provoked by making a condescending remark to Franklin. This created a motive for Johnston to have Franklin arrested, namely, to get the better of a person towards whom Johnston presently felt animosity. Moreover, Johnston was the only witness who provided Officer Fox with information which suggested that Johnston believed that Franklin would *517 cause him physical harm—a necessary element of the crime of menacing.*** As discussed above—and this point is crucial—Johnston’s conduct can reasonably be interpreted as inconsistent with his professed belief that Franklin would cause him physical harm, thereby giving Officer Fox a reason to disbelieve Johnston’s account of his fear. When an officer confronts a single witness to a crime (or an element of a crime), and that witness has a motive to he, and the facts that the witness reports to the officer suggest that the witness might in fact be lying, then that single witness account does not so conclusively equal probable cause that a jury could not find otherwise. See Gardenhire, 205 F.3d at 315-17 (allegation that complainant’s property had been stolen and fact that stolen property was seen in accuseds’ store window did not give rise to probable cause where other evidence suggested that no theft occurred).
Instead of arresting Franklin, there are several steps that Officer Fox could have taken to ensure that probable cause existed. An obvious step would have been to talk to Franklin. Although in this case, the facts as relayed by Franklin may have tended to exculpate him, in other cases, a potential defendant may make statements confirming the genuineness of the threat, thereby strengthening the inference that the complainant felt threatened. Alternatively, Officer Fox could have questioned Johnston or Collopy about the exculpatory facts, and if they provided a satisfactory explanation, Officer Fox could have proceeded to arrest Franklin. There is no evidence that Officer Fox took either of these steps.
Of course, a jury could find that these facts amounted to probable cause. Probable cause in a § 1983 matter is a question for the jury unless there is only one reasonable determination. Pyles v. Raisor, *518 60 F.3d 1211, 1215 (6th Cir.1995) (citing Yancey v. Carroll County, 876 F.2d 1238, 1243 (6th Cir.1989)). The majority, however, deprives a jury of the opportunity to make this determination, and forecloses the possibility that the jury could view the case as Franklin does: As an instance where Franklin released his anger through words, and Johnston acted upon his anger by instigating a baseless and damaging prosecution against Franklin. Officer Fox knew facts suggesting that this was the true nature of the altercation. The jury should have been allowed to determine whether these facts were sufficiently compelling to require the conclusion that Officer Fox acted unreasonably in seizing Franklin. I respectfully dissent, and would affirm the judgment of the district court.

 The majority rhetorically asks "What after all is wrong with a victim confirming what happened with an eyewitness before calling the police?” Maj. Op. at 513. I agree with the majority’s answer that nothing is wrong with this. This argument, however, begs the question. Johnston is a victim of menacing only if he was placed in fear of his safety-and the majority does not dispute that this reaction is inconsistent with fear.

 The majority’s assertion to the contrary notwithstanding, only Johnston provided Officer Fox with any information that suggested that Johnston believed that Franklin would cause him physical harm. The majority claims that Collopy’s statements that Franklin "moved close to Johnston’s face in a threatening manner” and her "serious concerns that there would be fighting” demonstrated a fear on the part of Johnston. This argument ignores the unmistakably clear requirement of O.R.C. § 2903.22(A) that the victim feel threatened. See, e.g., Denis, 678 N.E.2d at 998. As discussed above, the menacing statute is not violated where the victim does not feel threatened, even if the same conduct might make another person feel threatened. In this case, only Johnston provided Officer Fox with evidence of his fear, and this testimonial evidenced was belied by his conduct, which he and Collopy corroborated.
Collopy states in her affidavit, which was written after she was named as a defendant in the instant lawsuit, that she believed that Franklin “knowingly caused Mr. Johnston to believe that Mr. Franklin would cause physical harm to Mr. Johnston. It appeared to me that Mr. Johnston was genuinely concerned for his own physical safety.” J.A. at 91. She also states that she was "gravely concerned that [Franklin] would harm Johnston.” She does not state that she told these facts to Officer Fox, and her statement taken on the day of the incident is devoid of any such allegation. The majority claims that this fact is "of no moment.” Maj. Op. at 513. This argument misses the point: Probable cause must be determined from the point of view of the officer at the time of the arrest. Swiecicki v. Delgado, 463 F.3d 489, 499 (6th Cir.2006) (citing Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Thus, the fact that Collopy does not claim to have told these facts to Officer Fox is not "of no moment;” it is crucial.
Although Officer Fox, in his affidavit, states that "Mr. Johnston’s fears were corroborated by Ms. Collopy,” he gives no details as to how or when Collopy corroborated those fears, and offers no specific facts. This vague and conclusory statement does not provide any appreciable support to Officer Fox, especially considering the absence of any evidence of Johnston’s fear in Collopy’s statement to the police made at the time of the incident.