ROGERS, Circuit Judge.
Dwayne Provience filed this action under 42 U.S.C. § 1983 and Michigan law, claiming due process violations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), false arrest, and malicious prosecution against Detroit police Sergeant David Moore, and raising a municipal-liability claim against the city of Detroit. The district court denied the defendants’ motion for summary judgment, holding that Sergeant Moore was not entitled to qualified immunity or state-law governmental immunity, and finding that Pro-vience raised a genuine dispute of material fact as to the city’s municipal liability. Defendants now appeal that- decision. They argue that Sergeant Moore is entitled to qualified immunity because he did not violate Provience’s due process rights under Brady, and that Provience’s arrest and prosecution were supported by probable cause. The district court properly denied summary judgment on the Brady claim, but erred in denying summary judgment on the false-arrest claim and the malicious-prosecution claims under federal and state law.
On March 24, 2000, a man named Rene Hunter was murdered in Detroit, Michigan. Witnesses indicated that the perpetrators were two black males who pulled up next to Hunter at the corner of Greenfield Road and Pembroke Street in an older-model gray four-door Chevrolet Caprice Classic. The passenger in that car fatally shot Hunter from inside the car, which then sped off down a nearby side street. Hunter had been taken from the home of a friend, Courtney Irving, by men in a white Cadillac, and dropped off at the corner where he was killed. Courtney Irving lived next door to a gang of drug-dealers, run by Sorrell “Ready” Mosley and his nephew, Antrimone “Terry” Mosley. Irving was himself murdered on April 24, 2000, purportedly because the Mosleys discovered that Irving was preparing to inform the police that the Mosleys murdered Hunter for stealing a large amount of marijuana from them. Witnesses at the Irving murder scene reported that the perpetrators fired shots from inside a white Cadillac and a gray-colored vehicle *663 into the windshield of the vehicle that Irving was sitting in. The perpetrators then pulled Irving out of his car, placed him in the Cadillac, drove to the corner of Pembroke Street and Fenmore Avenue, dumped him there, and shot him several more times.
Sergeant David Moore of the Detroit Police Department was in charge of investigating the Hunter murder. A progress note on the investigation noted that the Hunter and Irving murders were connected and that a man named Maurice “Ban-gy” Sutherland had information about both murders. The progress note reads:
These t[w]o Homicide files are joined at the hip, because the two complainants were together when Rene [Hunter] got killed and Cour[t]ney [Irving] was going to tell who and why they killed Rene. Bangy has gotten a lwayer [sic] and wants to talk to us now (Attorney Blank 313-275-1551). He is going to come in on Monday at 11:00 am, 5/15/00. Maurice Sutherland AKA Bangy has the info we need to close these cases. Mr. Sutherland is the key. He is the set up person on Rene Hunter’s case.
R. 1-1 at 2. Sutherland met with investigators on May 15, 2000, but did not provide any information on the murders. Two weeks later, Sutherland was also murdered.
In June 2000, the police arrested Larry Wiley, a drug addict with a prior criminal record, for several burglaries. Wiley told the police that he had witnessed the Hunter murder, that Provience was the shooter, and that Provience’s brother drove the getaway car. Wiley claimed that he had been riding his bicycle in the area and saw Provience and his brother in a beige or yellow Buick Regal when the victim, Hunter, jumped out of their car. Wiley told police, “I saw Dewayne [sic] shoot the guy in the head.” Wiley claimed that Provience shot Hunter “[o]ver some drug money,” and that “[everybody knew that they had a beef.” However, contrary to what other witnesses had told police at the scene — that the car was a gray Chevrolet Caprice, that multiple shots were fired, and that the car turned right onto Greenfield and headed north — Wiley told investigators that the getaway car was a “beige or yellow [Buick] Regal,” that only one shot was fired, and that the car fled “[d]own Pembroke [westbound] from Greenfield.” Wiley was given a deal on his burglary charges in exchange for testifying against Provience.
Provience and his brother were arrested and prosecuted for Rene Hunter’s murder. The progress note connecting the Hunter and Irving homicides was not turned over to Provience’s counsel during discovery. Provience’s brother was acquitted following a bench trial, but Provience was convicted by a jury of second-degree murder in February 2001. The prosecution’s theory of the case was that Provience murdered Hunter because Hunter posed a threat to Provience’s drug territory. Wiley testified for the prosecution at Provience’s trial, but Provience was not advised that Wiley had been given a deal in exchange for his testimony. Provience was sentenced to a prison term of thirty-two to sixty-two years.
In 2002, Eric Woods, a friend of the Mosleys, confessed to the murder of Courtney Irving. Woods told police that Terry Mosley directed him to kill Irving because Irving was going to tell the police that the Mosleys were responsible for the Hunter murder. Woods’s confession was never disclosed to Provience’s counsel, even though Provience’s case was being appealed at the time. Provience exhausted his appeals in 2006. Law students at the University of Michigan Innocence Clinic began reviewing Provience’s case in *664 2009. The students interviewed Eric Woods, who told them that his mother had a file regarding Woods’s case. The Innocence Clinic reviewed that file and discovered the progress note connecting the Hunter and Irving murders. Wiley, the cooperating eyewitness at Provience’s trial, thereafter recanted his statement that he witnessed Provience shooting Hunter. The Innocence Clinic filed motions for relief from judgment and for a new trial on Provience’s behalf. On November 3, 2009, Judge Timothy Kenny granted the motion, vacating Provience’s conviction and ordering a new trial. On March 24, 2010, the Wayne County Prosecutor’s Office dismissed the murder charge against Provience.
Provience then filed this action in federal district court under 42 U.S.C. § 1983 and Michigan law. Provience argued that Sergeant Moore’s failure to disclose the following material exculpatory evidence violated Provience’s due process rights under Brady: (1) the progress note, (2) a photo of Ready Mosley and field notes of police officer William Ashford, which were provided to Sergeant Moore’s investigation team, (3) police documents from the Irving and Sutherland homicide files connecting the Hunter, Irving, and Sutherland homicides, and (4) “off the record” statements of Chris Peavey, a friend of Rene Hunter and Courtney Irving, who told investigators that Provience did not shoot Hunter. Provience also claimed that Sergeant Moore arrested him without probable cause and influenced the decision to prosecute by not turning over to prosecutors the exculpatory evidence cited above.
The defendants moved for summary judgment, arguing that Moore was entitled to qualified immunity and that the city of Detroit was not liable under a municipal-liability theory. The district court denied that motion. Provience v. City of Detroit, No. 10-11719, 2012 WL 1094326, 2012 U.S. Dist. LEXIS 44978 (E.D.Mich. Mar. 31, 2012). On the qualified-immunity issue, the district court held that Provience raised a genuine issue of material fact as to whether Sergeant Moore violated Brady by not turning over the progress note, Peaveys statement, and the names of witnesses interviewed by police regarding the shooting. Id. at *5, 2012 U.S. Dist. LEXIS 44978, at *14. The district court held that Provience also raised a genuine issue of material fact as to whether the information Sergeant Moore provided to form the basis of the arrest warrant[1] was false, id. at *5, 2012 U.S. Dist. LEXIS 44978, at *16, and as to whether Sergeant Moore participated or influenced the decision to prosecute the case against Provience without probable cause, id. at *6, 2012 U.S. Dist. LEXIS 44978, at *17. Finally, the district court held that Provience raised a genuine issue of material fact as to the state-law claim for malicious prosecution under Michigan law. Id. at *6, 2012 U.S. Dist. LEXIS 44978, at *19.
This court has jurisdiction over the defendants’ interlocutory appeal under 28 U.S.C. § 1291 because denial of summary judgment based on qualified immunity is an immediately appealable collateral order. Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Although Provience argues that this court lacks jurisdiction because the defendants have raised factual disputes, the mere fact that the defendants make an occasional factual argument does not destroy jurisdiction over the legal issue of qualified immunity, and this court may simply ignore the defendant’s attempts to dispute Provience’s version of the facts, obviating the *665 need to dismiss the entire appeal for lack of jurisdiction. Estate of Kirby v. Duva, 530 F.3d 475, 481 (6th Cir.2008) (internal quotation marks omitted). This court reviews the denial of summary judgment de novo, viewing all factual evidence and drawing reasonable inferences in Provience’s favor as nonmovant. See Harris v. City of Circleville, 583 F.3d 356, 364 (6th Cir.2009).
On this appeal, Sergeant Moore has not shown that he is entitled to qualified immunity on the Brady claim. Qualified immunity shields government officials performing discretionary functions from liability for civil damages “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
In Brady, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963), the Supreme Court held that a prosecutor’s suppression of evidence favorable to the accused violates due process where the evidence is material and exculpatory. We have, moreover, held that “the constitutional principles recognized in Brady apply just as equally to similar conduct on the part of police, and thus support our recognizing that the police can commit a constitutional deprivation analogous to that recognized in Brady by withholding or suppressing exculpatory material.” Moldowan v. City of Warren, 578 F.3d 351, 378-79 (6th Cir.2009). We read Sergeant Moore’s argument on appeal to challenge whether the evidence in question is sufficiently material and exculpatory that its withholding could invalidate a criminal conviction. In rejecting that argument, as we do below, we take no position on the limits, debated in Moldowan, on police officer liability for not giving exculpatory evidence to prosecutors. Id. at 382-83, 387. While the majority in Moldowan rejected a bad-faith requirement, the majority nonetheless proceeded to find sufficient evidence of bad faith. Id. at 389. The concurrence read the majority’s opinion as limiting the scope of the police officer’s duty to “evidence whose materially exculpatory value was known to the particular officer sued,” and indicated that this requirement was the “functional equivalent” of a bad faith requirement. Id. at 407 (Kethledge, J., concurring and dissenting). Provience’s argument on appeal is not explicitly directed toward such an actual knowledge requirement, and our decision should not be taken as reflecting on the scope of that requirement or the extent to which that additional requirement has been shown in this case.
Contrary to defendants’ argument, Pro-vience has shown that the evidence at issue is favorable to him as exculpatory or impeaching, that the evidence was suppressed, and that he was prejudiced by the suppression. These are the requirements for a Brady violation sufficient to reverse a conviction. See Harbison v. Bell, 408 F.3d 823, 830 (6th Cir.2005) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).
First, the progress note is material exculpatory evidence under Brady and its progeny because, considered collectively with the other evidence withheld during discovery, it is favorable to Provience and tends to establish his innocence. Brady defined material exculpatory evidence as evidence “favorable to an accused ... [and] material either to guilt or to punishment.” Brady, 373 U.S. at 87, 83 S.Ct. 1194. The progress note falls within that category because it supports a viable alternative theory of the crime, highlighting the connections between the Mosleys, Hunter, Irving, and Sutherland. The note tends to show that the Hunter, Irving, and Sutherland homicides were related to the same *666 drug-dealing enterprise. This evidence helps cast doubt on the prosecution’s theory of the case — that Provience killed Rene Hunter over an isolated drug territory dispute.
Second, there is no dispute that the evidence was suppressed, because Sergeant Moore never turned the progress note over to the prosecutor. Third, Provience was likely prejudiced by the suppression because there is a reasonable probability that Provience’s trial would have produced a different result if the progress note had been turned over. This court has noted that favorable evidence is material for Brady purposes “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Castleberry v. Brigano, 349 F.3d 286, 291 (6th Cir.2003) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In determining reasonable probability, the question is whether, in the absence of the suppressed evidence, the defendant “received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
At trial, the prosecution’s theory — that Provience killed Hunter in a dispute over drug territory — would likely have been undermined by the progress note. The note indicates that Irving was killed by someone who wanted to prevent Irving from offering information about Hunter’s murder, suggesting that the person responsible for Irving’s murder would also be implicated in Hunter’s murder. The progress note might also have helped impeach Wiley, and because the case against Provience relied so heavily on Wiley’s testimony, the note’s suppression undermines the reliability of the verdict. Provience has raised a triable fact issue as to whether the progress note’s suppression violated his constitutional rights under Brady. Moreover, defendants do not argue that, to the extent there may have been a Brady violation, the right at issue was not clearly established.
Whether the other evidence suppressed by the police — the photograph of Ready Mosley, field notes of Officer Ashford, the police documents from the Irving and Sutherland files, and the off-the-record statement of Chris Peavey — is material exculpatory evidence under Brady is less clear. Although this evidence is probably favorable to Provience, it is likely not material because it is cumulative of other evidence. Undisclosed evidence that is cumulative of other evidence does not support a Brady violation. See United States v. Warshak, 631 F.3d 266, 300-301 (6th Cir.2010); see also Spence v. Johnson, 80 F.3d 989, 995 (5th Cir.1996) (indicating that the materiality question turns on the evidence’s value relative to other evidence).
The photograph is probably nonmaterial because Ready Mosley’s identity was never at issue, and it provides no additional information about Hunter’s murder. There is no indication that Officer Ash-ford’s field notes or the documents from the Irving and Sutherland police files contained any information not already brought out at trial. Finally, Chris Peav-ey’s statement, which indicated that Provience was not the person who killed Rene Hunter, would only have added one more voice contradicting Larry Wiley’s eyewitness account.
These additional bits of evidence are probably nonmaterial for Brady purposes. Moreover, this court has previously concluded that the evidence withheld from the defense must be viewed collectively, rather than item by item, to determine the cumulative prejudicial effect. See Beuke v. *667 Houk, 537 F.Sd 618, 634 (6th Cir.2008); Schledwitz v. United States, 169 F.3d 1003, 1012 (6th Cir.1999). Therefore, because the progress note was clearly material exculpatory evidence, we may conclude that Provience’s rights were violated based on the note’s suppression, without having to determine whether each additional suppressed item was also material exculpatory evidence.
On the false-arrest claim, Sergeant Moore is, however, entitled to qualified immunity because the police had probable cause to arrest Provienee based on Wiley’s eyewitness statement. Provienee has not met his burden, which is to show that no reasonable officer would have concluded, under the totality of the circumstances, that probable cause to arrest existed. See Parsons v. City of Pontiac, 533 F.3d 492, 500-501 (6th Cir.2008).
Probable cause, supported by “facts and circumstances within the officer’s knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense,” bars a false-arrest claim under § 1983. See Criss v. City of Kent, 867 F.2d 259, 262-63 (6th Cir.1988) (citing Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). Because there were facts and circumstances within Sergeant Moore’s knowledge, namely the eyewitness account of Larry Wiley, that were sufficient for him to reasonably suspect that Provienee had committed the Hunter murder, Sergeant Moore had probable cause to seek a warrant for Provience’s arrest. The dispositive fact is that the information forming the basis of the arrest warrant was sufficient for any reasonably prudent officer to believe that Provienee had murdered Rene Hunter, even if that information later proved to be wrong.
Our precedent establishes that an investigating officer has probable cause to make an arrest based on an eyewitness account, “unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.” Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.1999) (internal quotation omitted). Although Larry Wiley’s eyewitness account was inconsistent with other witness testimony, an eyewitness’s statement does not need to be consistent with all other available evidence. See id. at 371. Even an admittedly “vague and inconsistent” account, id. at 368, can provide “ample probable cause,” id. at 371; see Skousen v. Brighton High Sch., 305 F.3d 520, 528 (6th Cir.2002). Provienee has not raised a genuine issue of material fact as to whether Sergeant Moore was reckless in relying on Wiley’s eyewitness account — even if that account did not comport with every detail of other witnesses’ statements. Sergeant Moore was at most negligent, and this court has held that investigatory negligence “does not demonstrate knowing or intentional behavior designed to violate [plaintiffs] constitutional rights.” Ahlers, 188 F.3d at 373-74.
In addition, Sergeant Moore’s belief that probable cause existed was reasonable. Although an officer “cannot look only at the evidence of guilt while ignoring all exculpatory evidence,” an officer does not “have [an obligation] to investigate independently every claim of innocence” and need only “consider the totality of the circumstances.” Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir.2000). Sergeant Moore fulfilled his investigatory duties and reasonably concluded that probable cause existed. Although it may be tempting to look back in hindsight and second-guess *668 Sergeant Moore’s reliance on Wiley’s contradicted account, we cannot do so. We must instead view the facts “from the perspective of the reasonable official on the scene.” Id. at 811.
Because Provience has not made the required showing that there was a lack of probable cause for the criminal prosecution, Sergeant Moore is also entitled to qualified immunity on the malicious-prosecution claim. To establish a claim for malicious prosecution under § 1988, Provience “must show that there was a lack of probable cause for the criminal prosecution.” Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir.2010). Provience has not met that burden here. The trial court considered all the evidence, including Wiley’s admittedly contradicted eyewitness account and the accounts of the other witnesses at the scene, and determined that there was probable cause to prosecute Provience. Because the available evidence was sufficient to warrant a prudent officer in believing that Provience had committed an offense, probable cause existed. Sergeant Moore is therefore entitled to qualified immunity on Provience’s malicious-prosecution claim.
Finally, Provience cannot state a prima facie claim of malicious prosecution under Michigan law. Provience bears the burden of establishing lack of probable cause in a malicious-prosecution action. See Matthews v. Blue Cross & Blue Shield, 456 Mich. 365, 572 N.W.2d 603, 609-10 (1998). Michigan law essentially requires that Provience show that a police officer “knowingly [swore] to false facts in a complaint.” Id. at 615. Provience has provided insufficient evidence to convince any rational juror that Sergeant Moore did so here. The district court therefore erred in denying the defendants’ motion for summary judgment with respect to Provience’s state-law claim of malicious prosecution.
The district court’s judgment with respect to the Brady claim is affirmed, the district court’s judgment with respect to the remaining claims of false arrest and malicious prosecution under federal and state law is reversed, and the case is remanded for further proceedings consistent with this opinion.

. Sergeant Moore stated that Judge B. Pennie Millender signed the arrest warrant for Dwayne Provience and his brother, on June 29, 2000. See Moore Depo., R. 78-1 at 17.