NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0058n.06

Case No. 23-3035

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 08, 2024
KELLY L. STEPHENS, Clerk

JOHN ARTUSO,

     Plaintiff - Appellant,

v.

WILLIAM FELT, et al.,

     Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. A jury of John Artuso's peers acquitted him of rape. Artuso then sued the detectives who investigated the alleged crime for malicious prosecution, failure to intervene, and several related state-law claims. The district court granted the detectives' motion for summary judgment, and Artuso now appeals. Because Artuso presents no genuine dispute of material fact as to probable cause for his prosecution, we affirm.

I.

A week before Christmas 2017, Jane Doe[1] approached law enforcement in Ashtabula, Ohio, with an allegation. During an inspection of her son's Ashtabula apartment, Doe claimed, the City of Ashtabula's housing code inspector, Plaintiff John Artuso, had locked her inside the apartment and raped her. In two interviews with law enforcement, Doe recounted the assault as follows.

---

[1] We employ a pseudonym to protect the privacy interests of the non-party accuser, whose identity is irrelevant to our decision.

On September 15, 2017,[2] at approximately 10:40 A.M., Doe attended Artuso's inspection of her son's Ashtabula apartment on her son's behalf. In attendance for the inspection were four individuals: Artuso, Doe, Doe's niece, and the apartment complex's manager. This initial inspection, which lasted about ten minutes, proceeded and ended without incident, and the attendees departed.

Approximately ten minutes later, Doe encountered Artuso as she drove into town. Artuso pulled his car alongside Doe's and spoke with her, asking that Doe return to the apartment to address an issue regarding the just-completed inspection. Doe agreed, and the two drove back to the apartment separately.

Back at the apartment complex, Doe unlocked and entered the apartment while Artuso followed, locking the door behind him. Once inside, Artuso propositioned Doe for sex in exchange for a favorable inspection. When Doe rebuffed this advance, Artuso pinned her to the apartment floor and began to rape her. Doe quickly managed to pull away, at which point she struck Artuso in the groin. Artuso recoiled, stood up, and warned Doe not to report the incident. He then exited the apartment.

Doe's allegations precipitated an investigation by the City of Ashtabula Police Department, and Defendant William Felt — a detective with the Department — assumed primary responsibility for inspecting Doe's claims. Based on Doe's allegations, Felt developed an understanding that the alleged rape had occurred sometime between 11:00 A.M. and 12:00 P.M. on the day of the inspection.

---

[2] During her interviews with law enforcement, Doe struggled to recall the exact date of the alleged rape. Speaking with the FBI, Doe initially alleged that the attack occurred on August 14 or 15, 2017. In her interview with the Ashtabula Police Department the following day, however, Doe first reported that the alleged rape occurred in November 2017 before later settling on September 15, 2017.

Shortly after his interview with Doe, Felt spoke with Doe's niece, the apartment complex manager, and Doe's son. These individuals could not directly corroborate the attack, but they did confirm the background facts of Doe's story: an inspection of the apartment occurred on September 15, 2017; Doe's son had asked Doe to attend the inspection in his stead; and both Doe and Artuso were in fact present for the inspection. With the assistance of several colleagues in the Ashtabula Police Department, Felt also collected evidence of Artuso's whereabouts on the day of the alleged attack, including Artuso's cell phone call logs and housing inspection records. Neither Felt nor his colleagues, however, analyzed the content of these records in the weeks immediately following Doe's interview.

Having completed these preliminary investigative steps, Felt transmitted his investigative file to the Ashtabula County Prosecutor's office in early January 2018. But neither Felt nor the prosecutor's office documented the file's contents, and a dispute exists as to what Felt in fact transmitted to the Ashtabula county prosecutor. Felt maintains that the file contained all the evidence gathered in the weeks following Doe's allegations, including Artuso's call logs and inspection records. But the then-county prosecutor, Nicholas Iarocci, cannot recall viewing those records prior to convening the grand jury, despite his review of the investigative file. For his part, Artuso alleges that Felt and his police department colleagues intentionally "altered" the file to withhold Artuso's inspection and cell phone records from the prosecutor's office. CA6 R. 15, Appellant Br., at 27. In any event, Iarocci presented the case to an Ashtabula County grand jury on January 30, 2018. After hearing testimony from Detective Felt and Jane Doe, the grand jury indicted Artuso for rape, kidnapping, and sexual battery.

Artuso's trial occurred in September 2018, during which the court admitted several pieces of exculpatory evidence, including Artuso's inspection records and cell phone call logs from the

date of the alleged assault. Artuso's inspection records reflected twenty-four inspections at seven different locations on the date of the alleged rape, including several inspections at the apartment complex where the alleged assault occurred. On direct examination, the apartment complex manager testified that several of these inspections occurred after Artuso's inspection of Doe's son's apartment. Artuso's cell phone records further reflected that Artuso fielded five phone calls, lasting a combined fourteen minutes, during the window of time — 11:00 A.M. to 12:00 P.M. — in which Felt understood that the attack had occurred. After an eight-day trial, the jury acquitted Artuso on all counts.

After his acquittal, Artuso sued Detective Felt and the three City of Ashtabula police officers who assisted him in his investigation, alleging malicious prosecution and failure to intervene under 42 U.S.C. § 1983. He also brought several state-law claims. The district court granted the defendants' motion for summary judgment on Artuso's federal claims and declined to exercise supplemental jurisdiction over the remaining state-law claims. Artuso timely appealed.

II.

We review the district court's grant of summary judgment de novo. *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if their establishment might affect the outcome of the suit under governing substantive law. *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a dispute is "genuine" only if the evidence is such that a reasonable juror could find for the nonmoving party. *Anderson*, 477 U.S. at 248. Finally, we take all facts and factual inferences in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

We review a district court's decision to decline to exercise supplemental jurisdiction over a plaintiff's state-law claims for abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

III.

A.

To prevail in a § 1983 action for malicious prosecution, the plaintiff must show that

> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).  Here, the parties dispute only the second element — the presence of probable cause for Artuso's prosecution.

Artuso was arrested on rape, kidnapping, and sexual battery charges following his indictment, and we have stated that a grand jury indictment "creates a presumption of probable cause in later proceedings under § 1983." *Lester*, 986 F.3d at 608.  Resisting this, Artuso argues that his prosecution falls within the exception to the probable-cause presumption that we set forth in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017).  There, we held that a plaintiff may rebut the presumption of probable cause arising from his indictment by showing that

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly ma[de] false statements (such as in affidavits or investigative reports) or falsifie[d] or fabricate[d] evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, [we]re material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions d[id] not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass

conspiring to commit perjury before the grand jury).

*Id.* at 587–88. Artuso claims that his prosecution satisfies the *King* exception because Detective Felt, with the assistance and oversight of his co-defendant colleagues, (1) recklessly failed to analyze the cell phone call logs and housing inspection records that police obtained during their investigation of Doe's allegations and then (2) recklessly or knowingly omitted those same records from the investigative file that Felt transmitted to the county prosecutor. With the benefit of the cell phone logs and inspection records, Artuso argues, the grand jury may not have indicted him. And moreover, Artuso concludes, the question of material fact that arises from that possibility — whether probable cause for his prosecution existed at the time of his indictment — demands resolution by a jury.

Analysis of the *King* exception presents a number of issues, most immediately whether the investigative omissions that Artuso alleges qualify as "false statements" or "fabricated evidence" such that Artuso can proceed past prong one of the three-pronged *King* inquiry. *Compare Jones v. Clark Cnty.*, 690 F. App'x 334, 336 (6th Cir. 2017) (finding malicious prosecution action sufficiently pled where previously indicted plaintiff alleged that the defendant officer "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence"), *with Lester*, 986 F.3d at 609 (noting that law enforcement's purported omission of exculpatory evidence to the grand jury "may not suffice to defeat [the probable-cause] presumption"). And even if Artuso satisfies the *King* standard and overcomes the presumption of probable cause arising from his indictment, the analytical complexities hardly stop there. The defendant officers preserved their qualified immunity defense below and raise it anew on appeal. Thus, even if Artuso demonstrates that the defendants prosecuted him without probable cause, he must further show that the defendants' probable cause finding "violated clearly established law." *Lester*, 986 F.3d at 608 (citing *D.C. v. Wesby*, 583 U.S.

48, 63 (2018)). And although the right to be free from prosecution absent probable cause is indeed "clearly established" in this circuit, *King*, 852 F.3d at 582–83, whether the "body of relevant case law" contains "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," proves far from obvious. *Wesby*, 583 U.S. at 64.

But we need not address these complexities to resolve Artuso's appeal, as his malicious prosecution claim fails for a more fundamental reason. Indeed, "the presence of probable cause for a prosecution or pretrial detention," we have held, "dooms any Fourth Amendment claim." *Lester*, 986 F.3d at 609 (citations omitted). And here, even accepting the cell phone call logs and housing inspection records for their maximum exculpatory value, Doe's detailed and consistent allegations provided more than enough evidence of Artuso's potential culpability to generate the "substantial chance of criminal activity" talismanic of probable cause. *Wesby*, 583 U.S. at 57 (citation omitted). Artuso's malicious prosecution claim, therefore, cannot succeed.

We begin with Doe's allegations standing alone. Doe twice recounted the alleged attack to law enforcement, presenting a detailed and identical story in both contexts. The sole inconsistency in Doe's allegations, across two separate interviews, was an initial struggle to recall the exact date of the alleged rape. Given Doe's status as the victim of the alleged crime and her consistent allegations, two well-established principles prove immediately relevant. First, we have often noted that, "since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *see also Lester*, 986 F.3d at 609 ("[A] statement from a witness known to the police is 'generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.'" (quoting *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013))). Second, we have further held that

small inconsistencies in a complainant's story are inadequate, by themselves, to vitiate probable cause where the statement proves otherwise reliable. *See Provience v. City of Detroit*, 529 F. App'x 661, 667 (6th Cir. 2013) ("Even an admittedly 'vague and inconsistent' account can provide 'ample probable cause.'" (quoting *Ahlers*, 188 F.3d at 371) (citations omitted)). So, although Artuso repeatedly underscores Doe's struggle to recall the exact date of the alleged assault, that minor lapse in memory fails to undercut Doe's credibility when considered alongside her status not simply as an eyewitness to the alleged crime, but indeed as the victim of the alleged crime itself. *See Ahlers*, 188 F.3d at 370–71 (noting, in a § 1983 action for false arrest, that where an alleged victim's story proved consistent across law enforcement interviews, "[the victim]'s accusation that she had been sexually assaulted by [the plaintiff], standing alone, was sufficient to establish probable cause"). Doe's statements (1) described the nature of the alleged offense, (2) identified its perpetrator, location, and timing, (3) remained consistent across two interviews, and (4) originated from the victim of the alleged crime. Taken at face value, Doe's claims provided Felt with adequate indicia of criminal activity to refer the case to the county prosecutor and, moreover, adequate indicia of criminal wrongdoing for the grand jury to find probable cause to indict. *Id.*

But even if Doe's allegations proved insufficient to establish probable cause on their own, the officers' decision to refer the case to the county prosecutor and the grand jury's decision to indict were appropriate given the two sets of corroborative facts that accompanied Doe's statements. First, both Doe's niece and the apartment complex manager confirmed that Artuso and Doe had attended the apartment's initial inspection on the date of the alleged attack. These confirmations substantiated Doe's allegations in two important respects: for one, they confirmed that Doe and Artuso knew each other and had interacted on the date of the alleged rape; for another,

they bolstered the plausibility of one of Doe's core allegations — that Artuso lured her back to the apartment using the pretext of an inspection follow-up.

Second, two Ashtabula residents came forward in the days immediately following Felt's interview with Doe and levied similar allegations against Artuso. These two women, who were ostensibly unfamiliar with Doe's claims, complained that they, too, had suffered sexual misconduct at Artuso's hands. Specifically, both women alleged that Artuso had sexually harassed them under the pretenses of his responsibilities as housing inspector — in one case alleging that Artuso entered the complainant's house unannounced while the complainant was showering and in the other case alleging that Artuso made sexually suggestive comments and took photographs of personal belongings during an unscheduled, impromptu inspection. That two individuals unfamiliar with Doe's claims separately alleged that Artuso sexually harassed them under comparable circumstances lent further credibility to Doe's story. This remains true even after accounting for the lesser severity of Artuso's alleged misdeeds towards the two unrelated complainants.

Countering the foregoing, Artuso claims that his housing inspection records and cell phone call logs from the date of the alleged assault hold such exculpatory value that they create a genuine issue of fact as to probable cause for his indictment. But as both a factual and legal matter, Artuso's contention fails to persuade.

As a factual matter, neither the inspection records nor the call logs are necessarily inconsistent with Doe's account of the attack. Artuso's inspection records indeed memorialize twenty-four inspections at seven different addresses on the date of the alleged rape, but they provide no indication of what time of day those inspections occurred or their duration. The records thus offer little, if any, exculpatory value, and they prove far from exonerative. Similarly, Artuso's

cell phone call logs do not, on their face, contradict Doe's story. Artuso's call records indicate that he participated in five calls lasting a combined fourteen minutes during the hour-long period in which Doe alleged she was raped. The records further reflect that these calls were dispersed throughout the hour. Nonetheless, the records show two meaningful periods of inactivity during the eleven o'clock hour on September 15, 2017: a twenty-one-minute period between 11:07 A.M. and 11:38 A.M. and a ten-minute period between 11:40 A.M. and 11:50 A.M. To be sure, these intervals of inactivity are brief. But Doe's account of the incident suggested that the alleged rape was brief too. So, while Artuso's cell phone records provided some basis to question Doe's account, they again fall well short of exonerating him.

Artuso's arguments meet a similar fate as a matter of law. As a preliminary matter, Artuso contends that the question of probable cause belongs to the jury, thus foreclosing summary judgment on the issue. But we have recently clarified in this context that "the ultimate question of probable cause . . . in a civil case when the historical facts are undisputed is a question of law for the court. . . ." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). And although Artuso raises a dispute of historical fact by claiming, contra Felt's contention, that Felt and his colleagues intentionally failed to transmit Artuso's inspection records and call logs to the prosecutor's office before his indictment, even that dispute does not forestall summary judgment. That is because when we analyze probable cause with the historical facts as Artuso would have preferred them — i.e., with the benefit of Artuso's records and their exculpatory value considered alongside the inculpatory effect of Doe's allegations — we nonetheless find that probable cause for Artuso's prosecution remains. Thus, to the extent Artuso has raised a dispute of fact as to whether the defendants withheld exculpatory information from the prosecutor, resolution of that dispute proves immaterial to resolution of Artuso's claims under governing law, and Artuso therefore cannot meet

his burden under Rule 56 to identify a genuine dispute of *material* fact. *See Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("If the moving party satisfies its burden [under Rule 56], then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury.").

Finally, the cases that Artuso cites in support of his position prove plainly distinguishable. In *Jones v. Clark Cnty.*, for example, we allowed the plaintiff's malicious prosecution suit to proceed where law enforcement allegedly concealed the results, in a child pornography prosecution, of a forensic test showing an absence of child pornography on the plaintiff's devices. 959 F.3d 748, 752–55 (6th Cir. 2020), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). But there, prosecutors dismissed the charges against the plaintiff when the forensic exam's results later came to light. *Id.* at 755. And moreover, we found that the undisputed results of the forensic testing "vitiated probable cause" for the plaintiff's continued detention.[3] *Id.* at 760. Here, on the other hand, when then-county prosecutor Iarocci reviewed Artuso's cell phone logs and inspection records during the post-indictment, pre-trial period, he nonetheless proceeded with Artuso's prosecution and trial. And further still, Iarocci testified that even if he had seen the call logs and inspection records prior to Artuso's indictment, he nevertheless would have presented Doe's allegations to the grand jury for a probable cause determination. In other words, and as discussed above, the exculpatory evidence that was allegedly concealed in Artuso's prosecution

---

[3] Jones's malicious prosecution action fell within the "subset of malicious prosecution claims which allege continued detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006). Because we analyze such claims under the same Fourth Amendment probable cause standards as more traditionally-styled "malicious prosecution" actions, Artuso's reliance on *Jones* is not per se misplaced. *See id.* at 748–50. Nonetheless, as discussed in the body text, *Jones* is distinguishable from this case based on the strength of the exculpatory evidence that investigators allegedly withheld from prosecutors. And for that reason, Artuso's reliance on *Jones* proves ineffective.

did not, as it did in *Jones*, vitiate probable cause.

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017) proves equally dissimilar. There, the § 1983 plaintiff overcame the probable-cause presumption (at the motion-to-dismiss stage) where he alleged that law enforcement's DNA analyst labeled the results of a "clearly" exonerative DNA test "inconclusive." *Id.* at 480–82. Putting aside that such a misrepresentation more neatly satisfies the "false statement" or "falsified evidence" prong of the *King* exception, this investigative malfeasance far outstrips the magnitude of the errors alleged in this case. In *Mills*, "the DNA report was the linchpin of the prosecution's probable cause," and the report's alleged falsification thus abrogated probable cause full stop. *Id.* at 481. Here, in contrast, the linchpin in Artuso's prosecution was Doe's story, and the reports that Artuso deems exonerative were at best partially exculpatory. To be sure, Artuso's records accounted for much of his time during the window in which Doe alleged she was attacked, but by the same token, the records established a "window of opportunity" in which the attack could have occurred. *Ahlers*, 188 F.3d at 372. Thus again, the exculpatory evidence presented here did not, as it did in *Mills*, exculpate Artuso to such an extent that it nullified the prosecution's evidentiary "linchpin" and thereby dissolve probable cause. 869 F.3d at 481.

Finally, *King* itself differs significantly from the situation we confront here. In *King*, we reversed summary judgment for the defendant law enforcement officer where he spearheaded an investigation targeting the plaintiff as the lead suspect in a cold murder case. 852 F.3d at 573. But there, the defendant officer sought a search warrant for the plaintiff's home with strictly circumstantial evidence — evidence that he allegedly knew could not support probable cause, as a warrant application backed by the same facts had been denied seven years earlier. *Id.* at 583. Moreover, the officer's affidavit failed to mention the decidedly exculpatory facts and forensic

evidence that the original investigation had revealed. *Id.* at 574. And despite discovering additional exculpatory forensic evidence during his own investigation, the defendant officer then sought an indictment, naming the plaintiff as the victim's killer in a report to the state prosecutor. *Id.* at 574–75.

Here, by contrast, Felt and his colleagues investigated Artuso for rape only after receiving the very much non-circumstantial evidence of an eyewitness complaint from the victim of the alleged crime. And unlike the defendant officer in *King*, neither Felt nor his colleagues knew the import — inculpatory or exculpatory — of the evidence that was allegedly withheld from the prosecutor and the grand jury. More to the point, and as previously noted, the evidence omitted did little to exculpate Artuso. In *King*, the omitted forensic evidence allegedly eliminated the plaintiff's firearm as a potential murder weapon. *Id.* at 583. And it also rendered the defendant officer's theory of the murder wholly implausible, as it showed that the plaintiff — whom the officer claimed had dragged the victim's body from her kitchen to her car, driven the body to the Kentucky River, and then heaved the body off a bridge — had only one leg and weighed nearly ninety pounds less than the victim. *Id.* at 574. Here, the call logs and inspection records purportedly omitted from Felt's investigative report, whatever their exculpatory value, did not render Doe's story or Felt's theory of the case so wholly implausible.[4]

---

[4] Artuso also cites *Post v. City of Munroe Falls*, 861 F. App'x 69 (6th Cir. 2021) and *Harris v. City of Saginaw*, 62 F.4th 1028 (6th Cir. 2023), but these cases fail to persuade within this suit's context. *Post*, an unreported case, indeed contains a brief discussion of the probable-cause presumption and the *King* exception. 861 F. App'x at 83. But we mentioned that body of case law strictly as part of a larger analysis as to whether the plaintiff had raised a genuine dispute of fact as to the defendant officer's *mens rea*, as Ohio law requires a showing of malice to overcome the presumption of statutory immunity afforded law enforcement in state-law claims for malicious prosecution. *Id.* In other words, *Post* analyzed only whether the plaintiff presented a genuine dispute as to the defendant officer's state of mind, not whether there existed a genuine dispute of fact as to the presence of probable cause. *Id.*

To sum up, a malicious prosecution claim cannot lie where probable cause is found. And here, notwithstanding the investigative oversights that Artuso alleges, the evidence points towards a clear, unavoidable conclusion: probable cause for Artuso's prosecution existed. Summary judgment for the defendants on Artuso's malicious prosecution action therefore proved appropriate.[5]

B.

The district court also granted summary judgment for the defendants on Artuso's § 1983 claim for failure to intervene. "[Police] officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights . . . ." *Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001) (citing *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982)). Artuso's failure to intervene claim necessarily rests on the defendants' alleged failure to intervene in his malicious prosecution. Because we find that Artuso's malicious prosecution action cannot survive summary judgment, we find that his failure to intervene claim must also fall away.

C.

Finally, having granted summary judgment for the defendants on Artuso's federal claims, the district court declined to exercise supplemental jurisdiction over Artuso's remaining state-law claims. We find no abuse of discretion in this decision under the circumstances. *See Burnett v.*

---

For its part, *Harris* is distinguishable for reasons akin to those stated in our analysis of *Jones*, *Mills*, and *King*. When viewing the facts in the light most favorable to the plaintiff, the defendant officers in *Harris* intentionally ignored unequivocally exonerative evidence, as demonstrated in part by the prosecutor's later decision to drop the charges against the plaintiff. 62 F.4th at 1032. And here, as noted previously, the evidence allegedly omitted from Felt's investigative report was partially exculpatory at best.

[5] Because we find that probable cause for Artuso's prosecution existed, any § 1983 malicious prosecution claim premised on the supervisory liability of Felt's co-defendants must also fail. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor.").

*Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (finding no abuse of discretion where district court declined to exercise supplemental jurisdiction over remaining state-law claims after granting summary judgment on § 1983 cause of action).

IV.

For the foregoing reasons, we affirm.